**Edith SCHARFF, Plaintiff,**

v.

**Anthony FRANK, U.S. Postmaster General, et al., Defendants.**

**No. C-1-89-651.**

United States District Court, S.D. Ohio, W.D.

Feb. 5, 1991.

Michael J. Mooney, Cincinnati, Ohio, for plaintiff.

Jan Martin Holtzman, Donetta Donaldson Wiethe, U.S. Dept. of Justice, Cincinnati, Ohio, for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the defendants' motion for summary judgment (doc. 8), the plaintiff's motion for partial summary judgment and memorandum in opposition to the defendants' motion for summary judgment (doc. 12), the defendants' memorandum in opposition to the plaintiff's motion for partial summary judgment and reply memorandum in support of the defendants' motion for summary judgment (doc. 14), and the plaintiff's reply memorandum in support of her motion for partial summary judgment (doc. 15). Also before the Court are the defendants' motion to cite additional authority which we have considered in support of their motion for summary judgment (doc. 18) and the plaintiff's reply memorandum (doc. 19). The Court held a hearing on these motions on November 26, 1990.

The plaintiff alleges that she was denied employment by the defendants due to her history of musculoskeletal injuries in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The Rehabilitation Act

prohibits discrimination against "handicapped persons" as defined by the Act. The plaintiff does not argue that she was handicapped at the time she was denied employment. Instead, the plaintiff argues that she qualifies as a "handicapped person" under the Act because she has a record of a handicap and because the defendants regarded her as handicapped when they denied her employment.

On May 4, 1989, the plaintiff presented her claim at an administrative hearing before an Equal Employment Opportunity Commission (EEOC) administrative law judge. On August 4, 1989, the EEOC judge issued a recommended decision concluding that the plaintiff was a handicapped person and that the defendants had denied her employment on the basis of her handicap. The EEOC judge's recommended decision and the transcript of the EEOC hearing are attached as exhibits to the defendants' motion. In a letter dated September 7, 1989, the Postal Service declined to adopt the EEOC's recommended decision. The plaintiff then filed this lawsuit.

■ In order for the plaintiff to assert a claim under the Act, she must satisfy the threshold requirement that she is a "handicapped person" as defined by the statute. *Jasany v. United States Postal Service*, 755 F.2d 1244, 1248 (6th Cir.1985). The defendants argue that they are entitled to summary judgment because the plaintiff is not a "handicapped person" within the meaning of the Act. The plaintiff argues that she is entitled to partial summary judgment on this element of her prima facie case.

The Rehabilitation Act defines "handicapped person" for these purposes as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). The term "major life activities" means "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c). The plaintiff does not argue that she currently has an impairment that substantially limits one or more of her major life activities. Instead, the plaintiff argues that she meets the Act's definition of a "handicapped person" because she has a record of such an impairment and because the defendants regarded her as having such an impairment.

The term "has a record of such an impairment" means that the individual "has a history of, or has been classified (or misclassified) as having a mental of physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1613.702(d). In 1980, the plaintiff injured her right ankle while playing high school basketball. Surgery was performed to remove a bone spur from her ankle. In 1981, the plaintiff injured her left knee while playing basketball. Arthroscopic surgery was performed to correct the plaintiff's knee injury. In 1987, the plaintiff sprained her left wrist. The plaintiff's wrist injury did not require surgery, but it required her to wear a wrist brace for a short period of time. Apparently, none of these injuries currently limit the plaintiff's ability to engage in physical activities. She currently plays soccer and softball several times a week, and she leads an active life as the mother of four small children. However, these injuries did cause the plaintiff to cease participating in sporting events and other physically demanding activities for a total of nine to ten months at the time the injuries occurred. The plaintiff's wrist injury also caused her to miss several weeks of work at a bakery where the nature of the plaintiff's job placed stress on her wrists.

We find that the plaintiff's injuries demonstrate that she has a record of a "physical impairment" affecting her musculoskeletal system which is necessary to qualify as a "handicapped person" under the Act. *See* 29 C.F.R. § 1613.702(b)(1). However, we find that these impairments did not substantially limit one or more of the plaintiff's major life activities. The plaintiff's inability to engage in competitive sporting events and other unusually demanding

physical activities did not constitute a substantial impairment of the plaintiff's major life activities. Furthermore, the fact that the plaintiff was temporarily unable to perform her work in the bakery does not demonstrate that she suffered from a substantial impairment of her major life activities. "An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one." *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 n. 3 (6th Cir.1985). The fact that the plaintiff was unable to perform her job at the bakery, which required an unusual strain on her wrists, does not demonstrate that her physical impairments prevented her from performing more than a narrow range of jobs. Therefore, we find that the plaintiff does not have a record of an impairment which substantially limited one or more of her major life activities.

■ The plaintiff also argues that she qualifies as a "handicapped person" because she is regarded by the defendants as having a physical impairment which substantially limits one or more of her major life activities. The term "is regarded as having such an impairment" means that the individual "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such an impairment; (3) or has none of the impairments defined [in these regulations] but is treated by an employer as having such an impairment." 29 C.F.R. § 1613.703(e).

The defendants admit that they consider the plaintiff to have a physical impairment. However, the defendants contend that the plaintiff's impairments only limit her ability to perform the specific job of letter carrier, and therefore, her impairments do not constitute a substantial limitation of her major life activities. The defendants maintain that the plaintiff's physical impairments do not prevent her from performing other jobs with the Postal Service. The plaintiff argues that if the defendants' assessment of the limitations imposed upon her ability to work by her perceived physical impairments is correct, then she would be unable to perform most jobs with the Postal Service and unable to perform approximately half of the jobs in the local economy for which she would be otherwise qualified. Therefore, the plaintiff contends that the defendants regard her as having a physical impairment that substantially limits her ability to work.

On February 24, 1988, the plaintiff was given a medical examination. The plaintiff was advised that her medical suitability for the letter carrier position could not be determined until she submitted medical records regarding the past surgery she had disclosed on her medical forms. The plaintiff obtained those medical records and met with the defendants' medical officer Dr. Gerald Jonsyn. Dr. Jonsyn evaluated the plaintiff's medical condition as "low risk," and indicated that the plaintiff was medically qualified to perform the essential functions of the letter carrier position. The plaintiff then returned to the office of the supervisor of employment and placement, Richard Gargana, with her medical assessment form. Mr. Gargana's office instructed the plaintiff to return to the medical office where Dr. Jonsyn changed his medical assessment from "low risk" to "moderate risk" and required a specialist report after having received a phone call from Mr. Gargana. The EEOC judge concluded that the plaintiff's medical assessment was changed as the result of the telephone conversation between Mr. Gargana, who is not a medical doctor, and Dr. Jonsyn.

Dr. Jonsyn changed his medical evaluation of the plaintiff's medical condition to "moderate risk" without the aid of a specialist report, even though the instructions on the medical assessment form state that this assessment is not to be made until the specialist report is received. On March 3, 1988, the plaintiff was informed that she had been found medically unsuitable for the position of letter carrier due to Dr. Jonsyn's evaluation of the musculoskeletal injuries to the plaintiff's knee, ankle, and

wrist. Dr. Mark Siegel, an orthopedic specialist, did not submit his specialist report to the defendants until March 8, 1988. Dr. Siegel evaluated each of the plaintiff's medical problems as follows:

(1) X-rays on the right ankle show no bone spur. The ankle appears excellent. There is no arthritis or deterioration. Stability is excellent without swelling. Neurologic evaluation is normal. This represents a normal right ankle without limitation.

(2) The left knee, at this time, is totally benign. There is no evidence of arthritis, deterioration or ligamentous instability. There is a full range of motion without swelling or crepitation. The knee is asymptomatic. This represents a normal left knee evaluation and this left knee represents no hindrance toward future employment and is a normal left knee.

(3) The left wrist is normal. There is no evidence of limited motion. There is no swelling, pain, or disuse atrophy. X-rays in two views show no evidence of any bony abnormality or arthritis. This is a normal left wrist and represents no limitation for work.

Essentially, this patient's orthopedic problems are fully resolved and there should be no limitation to her ability to work in any occupation.

On April 11, 1988, the defendants denied the plaintiff's request to reconsider her medical evaluation in light of Dr. Siegel's report. Dr. Jonsyn explained the rationale behind the defendants decision in a letter to Dr. Siegel dated March 31, 1988. Dr. Jonsyn stated, in part, as follows:

Due to the constant repetitive nature of this job and the significant and extensive demand on the musculoskeletal system, particularly the spine, knee, ankle, shoulder, and wrist joints, together with the appropriate muscles and ligaments involved, it has been documented statistically that the candidates with previous musculoskeletal injuries in any of these areas have a higher chance of reinjuring themselves, at an earlier rate and to a significant proportion.

On August 4, 1989, an EEOC judge found that the plaintiff had been the victim of handicapped discrimination and recommended that she should be hired as a letter carrier and awarded backpay. The EEOC judge concluded, in part, as follows:

[T]he Agency based its evaluation and decision, in part, on the belief that most individuals with the Complainant's medical history are likely to experience problems and that her physical condition posed an elevated risk of future injury, as evidenced by the testimony of the Agency medical officer and the contents of the letter he wrote to the Complainant's doctor. The Rehabilitation Act bars simplistic stereotypes of attributes associated with disabilities and requires a showing of reasonable probability of substantial harm to the Complainant, or to others, upon consideration of the individual's work and medical history.... The Agency failed to make such a showing.

In a letter dated September 7, 1989, the defendants rejected the EEOC judge's recommended decision and maintained the view that the plaintiff was not medically qualified for the position of letter carrier. The defendants' position was based on Dr. Jonsyn's medical evaluation of the plaintiff. Dr. Jonsyn stated that the plaintiff was limited to lifting a maximum of 35 pounds on a repetitive basis of several times an hour, several hours a day. Dr. Jonsyn also stated that the plaintiff was limited to three hours a day of continuous walking, which would decrease to two hours a day if the plaintiff started out carrying a 35 pound bag. In Dr. Jonsyn's opinion, the plaintiff's ability to lift and walk would be decreased by more than fifty percent in cold or damp weather. Dr. Jonsyn believes that these impairments would prevent the plaintiff from performing the job of letter carrier without injuring herself, although he stated that the impairments would not necessarily prevent her from performing other jobs with the Postal Service.

Assuming that the plaintiff has the physical impairments that she is regarding as having by the defendants, the plaintiff's vocational expert estimates that the plaintiff would be prevented from performing

approximately half of the unskilled jobs in the local economy that she would otherwise be qualified to perform. The vocational expert considers the plaintiff to be limited to employment of an unskilled nature, although he considers the plaintiff to be capable of performing higher skilled jobs if given training. The plaintiff also points out that other jobs with the Postal Service, such as the position of distribution clerk for which Dr. Jonsyn maintains he would have medically approved the plaintiff if such a position was available, require the frequent lifting of up to seventy pounds. Therefore, the plaintiff argues that the defendants' contention that they did not regard the plaintiff's physical impairments as limiting her from performing other jobs with the Postal Service is illusory.

 In order for the plaintiff to establish that she is a "handicapped person" as defined by the Act, she must show that the defendants regard her as possessing a physical impairment that substantially limits her major life activities. 29 C.F.R. § 1613.703(e). The ability to work is considered a major life activity. 29 C.F.R. § 1613.702(c). The determination of whether a person's ability to work is substantially limited is an individualized one which must be made according to whether a particular impairment constitutes a significant barrier to employment for a particular person. *Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986). Some of the factors relevant to whether an individuals ability to work has been substantially limited include the number and type of jobs from which the impaired person is disqualified, the geographical area to which the person has reasonable access, and the person's job expectations and training. *Jasany,* 755 F.2d at 1249. An impairment that affects only a particular job or a narrow range of jobs does not substantially limit the major life activities of the impaired individual. *Id.* at 1249 n. 3; *Forrisi,* 794 F.2d at 934.

We conclude that the plaintiff qualifies as a "handicapped person" under the Rehabilitation Act because the defendants regard her as having a physical impairment which substantially limits her ability to work. In light of the plaintiff's job expectations and training, the limitations assigned to the plaintiff by the defendants due to her physical impairments would prevent her from performing not only the specific job of letter carrier or only a narrow range of jobs. The plaintiff's vocational expert indicated that the plaintiff would be precluded from performing a wide range of jobs if her ability to perform physical tasks was limited in the manner described by Dr. Jonsyn. Furthermore, we assign little value to the defendants' contention that Dr. Jonsyn's revised medical evaluation would not have precluded the plaintiff from obtaining other positions with the Postal Service had such positions been available. Such positions were not available at the time nor have many of those positions been available since the time of the plaintiff's application for employment; and even if such positions were available, the physical requirements of those positions exceed the limitations imposed on the plaintiff by Dr. Jonsyn's revised medical evaluation. Finally, the defendants decided to treat the plaintiff's history of musculoskeletal injuries as a bar to the plaintiff's ability to perform the job of letter carrier, in spite of the fact that Dr. Jonsyn's initial medical evaluation and Dr. Siegel's medical evaluation both concluded that the plaintiff was medically qualified for the job. The Rehabilitation Act was designed to end the kind of stereotypical treatment of persons with impairments which the defendants' conduct in this case appears to epitomize.

Accordingly, the defendants' motion for summary judgment is hereby denied, and the plaintiff's motion for partial summary judgment is hereby granted. A settlement conference is hereby scheduled before the Honorable Jack Sherman, Jr. on March 7, 1991, at 10:00 a.m. A final pretrial conference is hereby scheduled for May 31, 1991, at 3:00 p.m. Trial is hereby scheduled to begin on July 15, 1991, at 9:30 a.m.

SO ORDERED.