826 F.Supp. 40 (1993)
Kenneth J. PARTLOW, Plaintiff,
v.
Marvin T. RUNYON, Postmaster General of the United States, Defendant.
Civ. No. 90-22-M.
United States District Court, D. New Hampshire.
June 30, 1993.
*41 Raymond J. Kelly, Manchester, NH, for plaintiff.
Gretchen Leah Witt, First Asst. U.S. Atty., Concord, NH, (Peter W. Gallaudet, Law Dept., U.S. Postal Serv., Windsor, CN, of counsel), for defendant.

MEMORANDUM ORDER
McAULIFFE, District Judge.
This is an action brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the regulations issued thereunder, 29 C.F.R. § 1613.701 et seq., for discrimination based on a handicap. The plaintiff claims that the United States Postal Service violated the Act by refusing to hire him as an automobile mechanic. The defendant has moved for summary judgment. For the reasons set forth below, defendant's motion is granted.

I. Relevant Facts.

Kenneth J. Partlow, a fifty-one year old automobile mechanic, has an extensive history of chronic back problems dating from 1961, when he injured himself while serving in the United States Army. From the time of that original injury, until his discharge in 1978, he was treated several times for low back pain. Upon his retirement from the Army, the Veterans Administration awarded him a service-connected disability rating of 20% for chronic lumbosacral strain and 10% for hearing loss.
After leaving the military, Partlow worked for a private company as an auto mechanic for three years. He had no back problems during that period. In February, 1981, he was hired as a civilian auto worker in the transportation motor pool at the United States Army Garrison, Fort Devens, Massachusetts. Partlow re-injured his lower back in October, 1984, while at work. X-rays revealed early degenerative joint disease of the cervical spine. Following this new back injury, Partlow requested a transfer from his position working on 20-ton vehicles to a light-duty assignment, working on vehicles under 2-½ tons. His request was granted, but within a few weeks he was returned to his original duties. In November, 1985, he was promoted to auto mechanic, a position he held until he resigned in October, 1989.
Following his promotion, Partlow suffered another series of work-related back injuries. In 1986, he injured himself while repairing a transmission, missing two-and-a-half weeks of work as a result. In April of 1987, he again injured his back at work, after which his physician advised him against engaging in heavy lifting, prolonged sitting or standing. He was also examined by an orthopedist, Dr. Wallace, who noted that x-rays of his spine showed mild degenerative changes. Wallace Deposition, p. 41. In April of 1988, he again hurt his back when his car hit a pothole. Dr. Wallace conducted another examination, and told Partlow not to lift more than 20-30 pounds on an intermittent basis or to stand for more than an hour at a time. He also advised Partlow to pursue a career more consistent with these restrictions. Wallace Deposition, p. 58. Shortly thereafter, Partlow saw a VA physician who recommended an MRI be taken of his spine. The MRI revealed a herniated cervical disc.[1]
In March, 1988, Partlow applied for a position as vehicle mechanic with the United States Postal Service in Manchester, New Hampshire ("the Postal Service"). Postal Service auto-mechanics repair mail-trucks, and remove and install complete motors, clutches, transmissions and other parts. The functional requirements of the job, according to the Postal Service, require "engag[ing] in heavy lifting up to 70 pounds and heavy carrying, 45 pounds and over; and ... during an eight-hour day, on an intermittent basis, engag[ing] in straight pulling, pulling *42 hand over head, pushing, walking, standing, crawling, kneeling, repeated bending, climbing (legs only)." Declaration of Paul S. Langa. ¶ 6. According to Partlow's vocational expert, the job required "lifting [from 2070 pounds], working in awkward positions, frequent bending and lifting," and prolonged standing. Deposition of Bernard Hecht, pp. 25-29, 47-48. Partlow applied for this job because he believed it would be less physically demanding than his job at Fort Devens, since the Postal Service has more modern equipment and assistive devices than does Fort Devens. Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 8. In August, 1988, he was informed that he had been tentatively selected for the position.
Partlow passed a pre-employment road-test in early August, 1988. Expecting to be hired by the Postal Service, he resigned from his position at Fort Devens. In late August, he was given a pre-employment medical examination. The result of that exam was inconclusive because the examining physician, Dr. Duval, felt he had insufficient information to determine whether Partlow was medically fit to perform the Postal Service job. Dr. Duval recommended that a back specialist examine him. Partlow's file was sent to Dr. Siebert, Chief Medical Officer for the Manchester Division of the Postal Service, for review. Dr. Siebert is an expert in occupational health who reviews approximately 50-75 job applications a year for the Postal Service. Dr. Siebert examined Partlow's VA medical file, Dr. Duval's examination and assessment, and the MRI report. He concluded that "a long history of chronic back pain is not compatible with the demands of this job" which, he stated, "requires repeated and prolonged bending, lifting and working in awkward positions." Based on Dr. Siebert's assessment, the Postal Service decided not to hire Partlow. After his rejection, from 1988 through 1989 Partlow worked as a part-time auto mechanic and driver for a limousine service. From October, 1990, to May, 1992, he worked as an apprentice optical technician.
After exhausting his administrative remedies through the Equal Employment Opportunity Commission, Partlow filed this suit, alleging that he is a handicapped person as defined by the Rehabilitation Act of 1973 ("the Act"). Partlow also claims that he is an "otherwise qualified" person, as defined by the Act, if reasonable accommodations were made by the Postal Service. The Postal Service has moved for summary judgment, arguing that Partlow does not fall within the ambit of the Act and that, even if he did, the accommodations he would require to perform the job are not reasonable.

II. Standard of Review.

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling upon a party's motion for summary judgment, the Court must, "view the entire record in the light most hospitable to the party opposing summary judgment, including all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).
The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), motion denied, 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987). If the moving party carries its burden, the non-moving party must set forth specific facts showing that there remains a genuine issue of material fact for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "In this context, `genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party [and] `material' means that the fact is one that might affect the outcome of the suit under the governing law." United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir.1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The non-moving party "may not rest upon *43 the mere allegations or denials of the adverse party's pleadings, but the [non-moving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The nonmov[ing] party cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992). "Summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

III. The Rehabilitation Act.

To state a claim under the Rehabilitation Act, a plaintiff must show that he or she is handicapped. Taub v. Frank, 957 F.2d 8 (1st Cir.1992). The Act defines a handicapped individual as:
any person who (i) has a physical ... impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such impairment.
29 U.S.C. § 706(8)(B); 29 C.F.R. § 1613.702(a) (1992). The term physical impairment includes "any physiological disorder or condition, ... affecting one or more of the following body systems: [n]eurological; musculoskeletal. ..." 29 C.F.R. § 1613.702(b)(1) (1992). "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1613.702(c) (1992) (emphasis added). The regulations define "is regarded as having an impairment" to mean:
(1) has a physical ... impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limit;
(2) has a physical impairment that substantially limits major life activities only as a result of the attitude of an employer towards such an impairment;
(3) or has none of the impairments defined in (b) of this section but is treated by an employer as having such an impairment.
29 C.F.R. § 1613.702(e) (1992)
Once the plaintiff has shown a handicap, "the employer is given the ultimate burden of proof on the issue of reasonable accommodation." Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir.1991); Prewitt v. United States Postal Serv., 662 F.2d 292, 308 (5th Cir. 1981). To do this, the employer must 1) identify the essential aspects of the job, and 2) demonstrate that reasonable accommodation is not possible. School Board of Nassau County v. Arline, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130, 94 L.Ed.2d 307 (1987). "Reasonable" accommodation does not include eliminating essential aspects of the job. Hall v. United States Postal Serv., 857 F.2d 1073, 1078 (6th Cir.1988); Jasany v. United States Postal Serv., 755 F.2d 1244, 1250 (6th Cir.1985).

IV. Discussion.

Partlow and defendant both agree that he has an impairment, "chronic lumbo-sacral strain," and that this back condition does not  in fact  limit major life activities. Partlow Deposition, p. 15; Defendant's Motion for Summary Judgment, p. 21. Instead, Partlow claims that he falls within the definition of handicapped under the Act because he was treated by the Postal Service as if his impairment did substantially limit a major life activity, working. See 29 C.F.R. § 1613.702(e).
The Postal Service contends that it never regarded Partlow's impairment as substantially limiting a major life activity, but only as disqualifying him from one position, automotive mechanic at its New Hampshire facility. It argues that Partlow cannot meet his burden of proving the Postal Service regarded him as handicapped merely by showing the Postal Service found him unable to satisfy the requirements of a single position.
Courts have uniformly rejected the notion that failure to qualify for one position renders a person "handicapped" within the meaning of the Act. "An employer does not necessarily regard an employee as handicapped simply by finding the employee to be *44 incapable of satisfying the singular demands of a particular job." Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir.1986) (acrophobia held not to substantially limit life activities, but only employee's ability to perform one position at a plant).[2]
Of course, just because Partlow was rejected for not meeting the Postal Service's physical requirements for an auto mechanic position does not mean he was not treated as handicapped.
"We acknowledge that a per se rule that permitted every unsuccessful applicant who was rejected due to a job requirement to be deemed handicapped `would stand the [Rehabilitation] Act on its head.' [citation omitted] However, a per se rule that never permitted an unsuccessful job applicant to prove he was perceived as being handicapped by pointing to the fact that he did not possess a so-called job requirement due to physical impairment would likewise stand the Act on its head."
Taylor v. United States Postal Serv., 946 F.2d 1214, 1218 (6th Cir.1991). The test for whether a perceived impairment substantially limits a major life activity is not whether the employer's rejection of the applicant was due to a good faith, narrowly-based decision that the applicant's characteristics did not match specific job requirements. If this were the criteria, most employers would easily escape the requirements of the Act.
Rather, the proper test is whether the impairment, as perceived would affect the individual's ability to find work across the spectrum of same or similar jobs. The seminal case setting out this approach is E.E. Black, Ltd. v. Marshall, 497 F.Supp. 1088, 1100-1101 (D.Haw.1980) (apprentice carpenter with spinal condition handicapped under the Act because perception of impairment would limit obtaining work in his general area of expertise):
[T]he real focus must be on the individual job seeker ... This necessitates a case-by-case determination of whether the ... perceived impairment of a rejected, qualified job-seeker, constitutes, for that individual, a substantial handicap to employment. ... If an individual were disqualified from the same or similar jobs offered by employers throughout the area to which he had reasonable access, then his impairment or perceived impairment would have to be considered as resulting in a substantial handicap to employment.... [W]hat is to be considered a similar job must be made on a case-by-case basis....
Most courts have followed Black. Reeder v. Frank, 813 F.Supp. 773, 781 (D.Utah 1992), petition for cert. filed, 61 U.S.L.W. 3789 (May 10, 1993) (No. 92-1788) (Black is "the seminal case" in this area); Forrisi, 794 F.2d at 932 ("the inquiry [of who is handicapped] is, of necessity, an individualized one  whether a particular impairment constitutes a significant barrier to employment for a particular person"); Jasany, 755 F.2d at 1249 ("the impairment at issue must be evaluated with reference to the individual job seeker"); Taylor, 946 F.2d at 1217; Visarraga v. Garrett, No. C-88-2828 FMS, 1993 WL 209997 at *5 (N.D.Cal. June 12, 1992); Scharff v. Frank, 791 F.Supp. 182, 187 (S.D.Ohio 1991); Perez v. Philadelphia Housing Authority, 677 F.Supp. 357, 360 (E.D.Pa.1987), aff'd, 841 F.2d 1120 (3d Cir. 1988).[3]
*45 Criteria by which to evaluate the impact of the perceived impairment include the number and types of jobs from which a person would be disqualified, the geographical area to which the plaintiff has reasonable access, and the individual's job expectations. Black, 497 F.Supp. at 1101. Accord Forrisi, 794 F.2d at 933; Jasany, 755 F.2d at 1249; Welsh, 977 F.2d at 1419; Fuqua v. Unisys Corp., 716 F.Supp. 1201, 1205-6 (D.Minn. 1989).[4] This Court will follow the same approach to evaluate the Postal Service's treatment of Partlow's impairment.
Partlow advances several arguments to show that the Postal Service regarded him as handicapped. The first is that Dr. Siebert, the Postal Service's Chief Medical Officer, described him as handicapped. "Dr. Siebert's declaration states unequivocally that he viewed Plaintiff as handicapped since he had a back problem." Plaintiff's Opp., p. 16. In fact, Dr. Siebert's affidavit is quite equivocal: "To the extent that Mr. Partlow had low back problems, I consider him to be handicapped because from my point of view as a physician I consider anything less than perfect health to be a handicap." Siebert Declaration, p. 5. Moreover, Dr. Siebert's definition of handicap  "anything less than perfect health"  does not even approximate the statutory definition. Dr. Siebert's declaration cannot be interpreted to mean that the Postal Service regarded him as handicapped as the term is defined by the Act.[5]
Partlow's second argument is that the Postal Service's perception of his impairment would disqualify him from the majority of the jobs in the local New Hampshire area for which he is qualified. "If [the Postal Service]'s assessment of [Partlow]'s limitation on lifting and carrying [is] substantially correct, [he] would be unable to perform approximately half of the jobs in the local economy[,] for he would be restricted to light or medium work." Plaintiff's Opp., p. 17. Therefore, he concludes, the Postal Service regarded him as having a substantial limitation on his ability to work.
Partlow's argument is similar to that made by the plaintiff in Scharff v. Frank, 791 F.Supp. 182 (S.D.Ohio 1991). There, the plaintiff, also a Postal Service job applicant,[6] suffered from musculoskeletal injuries to the knee, ankle and wrist. Her impairments did not prevent her from engaging in many physical activities, including sports. Nevertheless, when she applied for a position as letter carrier she was rejected after a pre-employment medical examination. The court held that the Postal Service regarded Scharff as having a physical impairment substantially limiting her ability to work, and was therefore handicapped within the meaning of the *46 Act. Scharff, 791 F.Supp. at 187. The court reached its conclusion by adopting the reasoning Partlow urges this court to accept: "[t]he plaintiff would be precluded from performing a wide range of jobs if her ability to perform tasks was limited in the manner described by [the examining physician]." Id.
Scharff is distinguishable on two grounds. First, the physical demands placed on letter carriers are much less burdensome than those placed on auto mechanics. Scharff necessarily was regarded as excluded from a far greater range of activities than Partlow.[7] Second, Scharff supported her claim that she would be prevented from performing approximately half of the unskilled jobs in the local economy with a vocational expert's testimony. Partlow, on the other hand, offers no support for his claim that he would be disqualified from a large part of the local job market. His claim is completely speculative. Accord Welsh, 977 F.2d at 1419 (Scharff-type argument fails because "plaintiff failed to present evidence like the vocational expert's opinion in Scharff.")
Partlow's primary employment for the past twenty years has been as a mechanic. His work experience is limited to that field. Plaintiff's Opp., p. 17. One might argue that, although he might not be disqualified from most jobs in the local economy, his perceived impairment would disqualify him from similar auto-mechanic jobs for which he is otherwise qualified. See Black, 497 F.Supp. at 1101 ("[plaintiff's] job expectations and training must be taken into account"). However, even if examined in this more restricted context, Partlow's perceived impairment would still not qualify as a substantial limitation on his ability to find work. It is not apparent that all auto-mechanic employers in New Hampshire would impose the same requirements as the Postal Service, and Partlow has not come forward with any evidence in this regard. Not all auto-mechanic jobs necessarily involve repairing trucks, heavy lifting, working in awkward positions, crawling, kneeling or repeated bending. For example, Partlow held a part-time driver/mechanic job after his rejection by the Postal Service. Even if auto-mechanic employers would generally perceive Partlow's impairment in the same way as the Postal Service did, he still would probably not be disqualified from so many auto-mechanic-type jobs that such a perception would pose a significant impediment to his finding work.
The Court finds that Mr. Partlow has not met his burden of demonstrating that the Postal Service regarded his impairment as a handicap within the meaning of the Act. His arguments are sophisticated, but speculative, and do not raise genuine issues of material fact. At most, plaintiff has established that defendant regarded him as unable to satisfy the requirements of a particular mechanic's position due to his particular back problems. This does not render him handicapped under, nor does it entitle him to the protection of the Act. See cases cited supra, note 2. Since plaintiff has failed to establish a prima facie case that he is handicapped within the meaning of the Rehabilitation Act of 1973, it is unnecessary to address the availability of reasonable accommodations.
Accordingly, defendant's Motion for Summary Judgment (document no. 41) is granted.
SO ORDERED.
NOTES
[1] An MRI (Magnetic Resonance Imaging) is a non-invasive diagnostic procedure which provides images of the body's soft tissues.
[2] See also Maulding v. Sullivan, 961 F.2d 694 (8th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993) (sensitivity to chemicals only a limitation on lab work); Daley v. Koch, 892 F.2d 212 (2d Cir.1989) (personality disorder only a limitation on being a policeman); Torres v. Bolger, 781 F.2d 1134 (5th Cir.1986) (per curiam) (left-handedness only a limitation on job requiring right-handed mail sorter); Jasany v. United States Postal Serv., 755 F.2d 1244 (6th Cir.1985) (being cross-eyed only limitation on operating certain machinery); Elstner v. Southwestern Bell, 659 F.Supp. 1328 (S.D.Tex. 1987), aff'd mem., 863 F.2d 881 (5th Cir.1988) (knee problem only a limitation on work involving pole climbing); Tudyman v. United Airlines, 608 F.Supp. 739, 745 (C.D.Cal 1984) (weight only a limitation on work as airline attendant); Note, The Rehabilitation Act of 1973, 30 Wm. & Mary L.Rev. 149, 169-72 (1988) (discussion of the "bootstrapping-dilemma" generated by including working as a major life activity.)
[3] An employee is not handicapped merely because he is rejected from the specific job of his choice. See Tudyman v. United Airlines, 608 F.Supp. 739, 745 (C.D.Cal 1984) ("The regulations define major life activity as, inter alia, `working,' ... but not `working at the specific job of plaintiff's choice.'"); Welsh v. City of Tulsa, Oklahoma, 977 F.2d 1415, 1417 (10th Cir.1992) (same); Daley v. Koch, 892 F.2d at 215 (same); Cook v. Rhode Island, Dep't of Mental Health, Retardation and Hospitals, 783 F.Supp. 1569, 1574 (D.R.I.1992) (same).
[4] See also Haines, E.E.Black, Ltd. v. Marshall: A Penetrating Interpretation of "Handicapped Individual" For Sections 503 and 504 of the Rehabilitation Act of 1973 and for Various State Equal Employment Statutes, 16 Loy. L.A. L.Rev. 527, 554-57 (1983) ("quest for controlling criteria ... involves rejecting superficial disclaimers" by employers). The difficulties an ad-hoc test might cause employers are more apparent than real. "Employers ... may argue that ... they do not know in advance who is covered by the Act. However, before they come to that precarious position, they must already be dealing with a person who has (or who is perceived as having) a physical or mental impairment, who is capable of performing a particular job and who is rejected for that job on the basis of the impairment. These facts alone should put [employers] on notice that they are dealing with a person covered by the Act." Black, 497 F.Supp. at 1100.
[5] Partlow also states that Paul Langa, Postal Service Director of Human Services, who made the decision not to hire him, "stated a similar conviction that the plaintiff was handicapped." Plaintiff's Opp., p. 16. Langa's affidavit, in fact, states: "I did not perceive Mr. Partlow as a handicapped person because his back condition did not substantially interfere with his ability to work." Declaration of Paul S. Langa, p. 3.
[6] For some reason, the United States Postal Service seems to be a recurring defendant in suits brought under the Rehabilitation Act. See, e.g., Taub v. Frank, 957 F.2d 8 (1st Cir.1992); Taylor v. United States Postal Serv., 946 F.2d 1214 (6th Cir.1991); Torres v. Bolger, 781 F.2d 1134 (5th Cir.1986); Gilbert v. Frank, 949 F.2d 637 (2d Cir. 1991); Hall v. United States Postal Serv., 857 F.2d 1073 (6th Cir.1988); Reeder v. Frank, 813 F.Supp. 773 (D.Utah 1992); Diaz v. United States Postal Serv., 658 F.Supp. 484 (E.D.Cal.1987); Jasany v. United States Postal Serv., 755 F.2d 1244 (6th Cir.1985); Carty v. Carlin, 623 F.Supp. 1181 (D.Md.1985).
[7] The physician who examined Scharff concluded she would be unable to lift more than "35 pounds on a repetitive basis of several times an hour, several times a day" or to engage in three hours a day of continuous walking. Scharff, 791 F.Supp. at 186. He believed her ability to perform these tasks on cold or damp days would decrease by fifty per cent. Id. Taylor v. United States Postal Serv., 946 F.2d 1214 (6th Cir. 1991), on which Partlow also relies, is distinguishable on similar grounds. The plaintiff in Taylor was deemed unqualified not only to be a letter carrier but also distribution clerk, due to degenerative disease of both his knees and legs.