Leonard W. TAYLOR, Plaintiff–
Appellant,

v.

UNITED STATES POSTAL SERVICE;
Anthony Frank, U.S. Postmaster
General, Defendants–Appellees.

No. 90–4087.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 10, 1991.

Decided Oct. 16, 1991.

Michael J. Mooney (argued and briefed), Barbara J. Cook, Cincinnati, Ohio, for plaintiff-appellant.

Jan M. Holtzman, Asst. U.S. Atty., Cincinnati, Ohio, Joan C. Goodrich (argued and briefed), U.S. Postal Service, Office of Labor Law, Washington, D.C., Robert L. Sawicki, U.S. Postal Service, Philadelphia, Pa., for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges; and TAYLOR, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Leonard W. Taylor brought suit under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, alleging that the United States Postal Service discriminated against him on the basis of his physical handicap by refusing to hire him as a postal distribution clerk. Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to have all the proceedings, including the trial and entry of final judgment, conducted by a United States Magistrate. Following a six day, non-jury trial, the magistrate ordered that judgment be entered in favor of the Postal Service, finding that Taylor had failed to establish that he was a "handicapped person" within the meaning of the Rehabilitation Act. 771 F.Supp. 882. Taylor challenges this finding on appeal. For the following reasons, we reverse.

There is no dispute as to the operative facts in this case. In early 1987, Taylor applied for the position of distribution clerk

---

[*] The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

with the Franklin, Ohio, Post Office. On January 30, 1987, Postmaster Ronald Ruppert informed him that he was tentatively hired for the position conditioned upon his satisfactory completion of a medical examination and a driver's test. On that same day, Richard Gargana, the supervisor of employment and placement for the Cincinnati Division, informed Taylor that he had been medically disqualified from a letter-carrier position for which Taylor had earlier applied. The Postal Service Field Medical Officer, Dr. Doran Christensen, made this determination.

Based upon his examination of Taylor, Dr. Christensen concluded that in his opinion Taylor could not perform the job of letter carrier with its "heavy lifting, moderate carrying and prolonged walking and standing on slippery and uneven walking surfaces. On the basis of the back history and examination Taylor would also be unsuitable for positions as Mail Handler or Distribution Clerk." Dr. Christensen was scheduled to conduct another examination of Taylor on February 10, 1987, in conjunction with the distribution clerk position. However, Dr. Christensen never conducted this examination because he informed the Postal Service that in his opinion, based upon his prior examination, Taylor was not suitable for the physical exertion and strenuous activity required in the position of distribution clerk. Based upon this adverse medical report, the Postal Service declined Taylor's application for employment.

The position description for distribution clerk is as follows:

Clerks handle heavy sacks of letter mail, paper mail, and parcel post weighing up to 70 pounds; and sort and distribute mail to post offices and to carrier routes in accordance with established schemes. They may also perform a variety of services at public windows of post offices, post office branches or stations; and perform related duties as assigned. The work involves continuous standing, distribution of mail, stretching, and reaching.

At trial, the magistrate heard testimony from a number of experts concerning Taylor's medical condition. Dr. Christensen testified as to his reasons for concluding that Taylor could not perform the job of distribution clerk. Specifically, Dr. Christensen explained that it was the repetitive lifting aspect of the position that Taylor could not perform without sustaining injury. Dr. Christensen opined that Taylor's inability to perform the distribution clerk duties without significant risk of injury resulted from the cumulative effect of his degenerative disease in both his back and knees. Dr. Rose Hayes, an ergonomics expert, agreed that, given Taylor's physical limitations, he should be restricted to "light work." Hayes also agreed with Dr. Christensen's opinion that Taylor would be at risk performing the duties of a distribution clerk given his medical conditions, i.e., the degenerative disease in his back and knees.

The Post Office also elicited the testimony of Dr. Gerald Jonsyn, who replaced Dr. Christensen as the Area Medical Officer for the Post Office. He testified, based upon Taylor's past medical history and the physical exam performed by Dr. Christensen, that Taylor faced a significant risk of injury if he worked as a distribution clerk. Additionally, the magistrate heard testimony from Dr. Stephen Pledger, a witness called by Taylor. Dr. Pledger testified that in his opinion Taylor would not qualify as a mail carrier but would qualify as and could perform the duties of a clerk in the postal service. However, Dr. Pledger based his opinion on his understanding that a distribution clerk's duties consisted of "working out front in the Post Office, taking packages, selling stamps, getting packages."

Based upon this testimony, along with other evidence introduced at trial, the magistrate found that Taylor's back and knee injuries constituted a physical impairment within the meaning of the Rehabilitation Act. *See* 29 C.F.R. § 1613.702(b)(1). However, the magistrate concluded that Taylor had failed to show that his physical impairment substantially affected one or more of his major life activities. Additionally, the magistrate rejected Taylor's argument that he should be considered handicapped under

the Act because the Postal Service regarded him as having a physical impairment which substantially limited a major life activity.

■ Our starting point in determining whether Taylor is entitled to the protection afforded handicapped individuals by the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, is with the language of the statute itself. *See Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). The Act defines a "handicapped individual" as any person who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(7)(B). The applicable regulations define "major life activities" as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c). Having "a record of such impairment" is defined as "a history of, or has been classified (or misclassified) as having a ... physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1613.702(d). The phrase "regarded as having such an impairment" is defined as:

> (1) has a physical ... impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical ... impairment that substantially limits major life activities only as a result of the attitude of an employer toward such an impairment; (3) or has none of the impairments defined in [29 C.F.R. § 1613.702(b)] but is treated by an employer as having such an impairment.

29 C.F.R. § 1613.702(e). These regulations were drafted with the oversight and approval of Congress. *See School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987) (citing *Consolidated Rail Corporation v. Darrone*, 465 U.S. 624, 634–635 nn. 14–16, 104 S.Ct. 1248, 1254–1255 nn. 14–16, 79 L.Ed.2d 568 (1984)). Accordingly, the regulations' interpretation of the Act is entitled to deference. *See Alexander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985) (federal regulations provide an important source of guidance on the meaning of § 504). Taylor argues here, as he did in the earlier proceedings, that he meets the Act's definition of a "handicapped individual" because he has a record of a physical impairment that substantially limits a major life activity and, in addition, that he was regarded as having such an impairment by the Postal Service.[1]

■ The magistrate concluded that Taylor's knee and back injuries did constitute a physical impairment within the meaning of the Act; this finding is not challenged by the Postal Service on appeal. Instead, the central question in this case concerns the second part of the Act's definition of a handicapped individual, namely whether Taylor established that he has a record of such an impairment or that he was regarded as having such an impairment.

In 1974 Congress added the portion of the definition of a handicapped individual under which Taylor seeks to establish coverage of the Act. These subsections, (ii) and (iii), were added in an effort to "preclude discrimination against a '[a] person who has a record of, or is regarded as having, an impairment [but who] may at present have no actual incapacity at all.'" *Arline*, 480 U.S. at 279, 107 S.Ct. at 1126 (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 405–406 n. 6, 99 S.Ct. 2361, 2366–2367 n. 6, 60 L.Ed.2d 980 (1979)). In *Arline*, the Supreme Court held that a person suffering from the conta-

---

**1.** Taylor also argued in the earlier proceedings that he was properly considered handicapped under section (i) of the Act's definition because he had a physical impairment that substantially limited one of his major life activities. He has apparently chosen not to pursue this argument on appeal arguing instead that he qualifies under sections (ii) and (iii) of the Act's definition.

gious disease of tuberculosis can be a handicapped person within the meaning of § 504 of the Rehabilitation Act. *Id.* 480 U.S. at 289, 107 S.Ct. at 1132. In reaching this conclusion, the Court found that the fact that Arline's tuberculosis required hospitalization was

> more than sufficient to establish that one or more of her major life activities were substantially limited by her impairment. Thus, Arline's hospitalization for tuberculosis in 1957 suffices to establish that she has a "record of ... impairment" within the meaning of 29 U.S.C. § 706(B)(ii), and is therefore a handicapped individual.

*Id.* at 281, 107 S.Ct. at 1127. Unfortunately, the court does not provide any details concerning either the length of Arline's hospitalization or the severity of her affliction. Therefore, unless we read *Arline* as establishing the nonsensical proposition that *any* hospital stay is sufficient to evidence a "record of impairment," which we decline to do, the case offers us little guidance. The Court did discuss, however, in some detail what "regarded as having" a physical or mental impairment that substantially limits a major life activity entails. The Court noted some examples of persons who were intended by Congress to be covered by this subsection, such as "a person with some kind of visible physical impairment which in fact does not substantially limit that person's functioning." *Id.* at 282, 107 S.Ct. at 1128 (quoting S.Rep. No. 93–1297, p. 64 (1974)).

The case of *Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985) is instructive in its discussion of the Act's definition of "handicapped." In *Jasany,* the court found that the plaintiff had not established a prima facie case of handicapped discrimination because he failed to demonstrate that his physical impairment, strabismus or crossed eyes, substantially limited one of his major life activities. *Id.* at 1250. The court rested its conclusion on the fact that the parties stipulated that the plaintiff's condition had never had any effect whatsoever on any of his activities, including past work history and ability to carry out other duties. *Jasany* discussed

approvingly the case of *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Haw.1980), where the district court concluded that an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment was not substantially limiting within the meaning of the statute. *Jasany,* 755 F.2d at 1248. In *Black,* the court determined that the plaintiff was handicapped within the meaning of the Act because, assuming that all firms offering positions similar to the one offered by the defendant disqualified him due to his back condition, plaintiff would be substantially limited in obtaining his career goal. *Black,* 497 F.Supp. at 1103.

Additionally, in *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986), the Fourth Circuit rejected the plaintiff's argument that, although he was not in fact handicapped, he was perceived as being so by a prospective employer. Plaintiff suffered from acrophobia (fear of heights) and the employer declined his employment application because the job for which he was applying required the occupant to climb stairways and ladders. The court noted that plaintiff's reasoning "would imply that anyone who failed to obtain a single job because of a single requirement of employment would become a handicapped individual because the employer would thus be regarding the applicant's failure as a handicap." *Forrisi,* 794 F.2d at 935 (citing *Tudyman v. United Airlines,* 608 F.Supp. 739 (C.D.Cal.1984)).

■ The question as to whether an individual meets the statutory definition of handicapped under the Act is best suited to a case-by-case analysis. *Forrisi,* 794 F.2d at 933. Although not controlling, it is significant to note that individuals with impairments similar to those possessed by Taylor have been deemed handicapped for the purposes of the Rehabilitation Act. *See Hall v. United States Postal Service,* 857 F.2d 1073 (6th Cir.1988) (plaintiff sustained injury to her right hip, foot and back that limited her ability to engage in excessive bending and strenuous lifting); *Sisson v. Helms,* 751 F.2d 991 (9th Cir.), *cert.*

**1218**

*denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985) (plaintiff suffered from ankylosing spondylitis, which causes stiffening of the joints, limiting his mobility); *Prewitt v. United States Postal Service,* 662 F.2d 292 (6th Cir.1981) (gunshot wounds caused plaintiff to have limited mobility in his left arm and shoulder); *Black,* 497 F.Supp. at 1091 (plaintiff suffered from a congenital back anomaly, a partially sacralized transitional vertebra, that made him a poor risk for heavy labor).

The Supreme Court in *Arline* declared that the Act's definition of a handicapped individual is broad, 480 U.S. at 285, 107 S.Ct. at 1129, and further, that "Congress was as concerned about the effect of an impairment on others as it was about its effect on the individual. *Id.* at 282, 107 S.Ct. at 1128. In this case we believe that Taylor has established that he was "regarded as having" a physical impairment and that this perception substantially limited his ability to work. We acknowledge that a per se rule that permitted every unsuccessful applicant who was rejected due to a job requirement to be deemed handicapped under the Act "would stand the Act on its head." *Forrisi,* 794 F.2d at 935. However, a per se rule that never permitted an unsuccessful job applicant to prove he was perceived as being handicapped by pointing to the fact that he did not possess a so-called job requirement due to a physical impairment would likewise stand the Act on its head. How else would a person who, for example, had a cosmetic disfigurement ever prove that he was handicapped under the Act except by pointing to the fact that an employer did not hire him for that reason. *See Arline,* 480 U.S. at 283 n. 10, 107 S.Ct. at 1129 n. 10 (cosmetic disfigurement listed in regulations as illustrative of a physical impairment covered by the Act).

We therefore remand this case to the district court at which time the Postal Service should be given an opportunity to demonstrate that the challenged criteria are related and required by business necessity, and that reasonable accommodation is not possible. *See Jasany,* 755 F.2d at 1250.

The judgment of the district court is reversed.