16 F.3d 1218
 5 NDLR P 456
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Veronica A. AVERY, Plaintiff-Appellant,
v.
UNITED STATES POSTAL SERVICE; Anthony M. Frank, Postmaster
General of the United States; and American Postal
Workers' Union, Defendant-Appellees.
 No. 92-1713.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1994.
 
 Before: KENNEDY, MARTIN and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Veronica A. Avery appeals the District Court's grant of summary judgment in favor of the United States Postal Service and the Postmaster General in this action for handicap discrimination under the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 et seq. Plaintiff claims discrimination, first, in her discharge from the position as a clerical distribution clerk and, second, in the Postal Service's denial of her request for reinstatement to the position. The District Court, without distinguishing between her discharge and refusal to reinstate claims, granted summary judgment because it found she was not an "individual with handicaps" within the meaning of the Act. We affirm in part, reverse in part and remand this case to the District Court.
 
 
 2
 Plaintiff began working for the United States Postal Service at its Air Mail Facility in Detroit, Michigan in 1981. Her position was clerical distribution clerk and her job included lifting heavy bags of mail. In 1984, plaintiff sustained injury to her back, wrist and knee in a non-work-related automobile accident. She could not perform her duties at the Air Mail Facility.
 
 
 3
 Between March 1984 and July 1985, plaintiff worked only two days. The Postal Service attempted to accommodate her physical problems at least twice. It relieved her of her lifting duties by assigning her to the task of putting letters in a mail sorting case, but she was unable to do the reaching to sort the letters and was unable to sit in her chair for long periods of time. The Postal Service also tried assigning plaintiff to the duty of putting mail in a box, but her injuries prevented her from standing for the length of time needed for this assignment.
 
 
 4
 In July 1985, the Postal Service advised plaintiff she would be terminated because she had been available for work only two days in the previous sixteen months. This notice said she could apply for reinstatement when she recovered. Plaintiff grieved this notice of discharge. The grievance was settled. The Postal Service agreed to rescind the termination notice if plaintiff agreed to return to work by December 1985. She returned to work after a Postal Service doctor found her fit to return to light duty after December 12, 1985.
 
 
 5
 Plaintiff worked between December 1985 and September 1986. However, she seldom worked more than two days at a time.
 
 
 6
 On May 21, 1987, the Postal Service sent her a second discharge notice because she had been unavailable to work since September 21, 1986. The notice also stated plaintiff could apply for reinstatement when she was able to return to work.
 
 
 7
 Plaintiff then produced a letter from her doctor saying she could return to work with no restrictions. Plaintiff also signed a statement she was fit for duty and agreed to return to work full time in exchange for the Postal Service rescinding her discharge. She did not, however, work full time. Plaintiff seems to argue that the Postal Service should have accommodated her failure to work regularly.
 
 
 8
 The Postal Service sent a third notice of discharge on September 17, 1987. The reason given for the discharge was excessive absenteeism. The notice pointed out that she had been scheduled to work 616 hours between May 23, 1987 and September 11, 1987, and was absent or on unscheduled leave for 358 hours or 58.2% of the time and that her absenteeism represented 38.66% of the total absenteeism for that postal station. Plaintiff was advised that her discharge would be effective October 30, 1987. There was no mention of potential reinstatement.
 
 
 9
 Plaintiff filed a grievance, which was dismissed by the union on March 17, 1988. She later received a personnel form showing that her removal had been effected on March 17, 1988, the date the union withdrew her grievance. Plaintiff called the union, which also informed her she had been fired from the Postal Service.
 
 
 10
 After her termination, plaintiff received two notices in July 1988, which the Postal Service mistakenly mailed to her. The first notice informed her that she had been reassigned to another installation, and the second notice changed the reassignment date established in the first notice. Plaintiff reported to work on the date specified in the second notice, only to be told that she had been fired previously. She promptly received another notice on August 5th informing her that the notice of reassignment had been sent in error and was rescinded because of her previous termination.
 
 
 11
 Plaintiff took no action until November 8, 1988, when she applied for reinstatement. She enclosed a letter from her physician that she was fit for full-time duty as of April 1988. The Postal Service denied her application for reinstatement on February 8, 1989. The letter noted that plaintiff's discharge resulted from poor attendance and explained that Postal Service policy prevented employment of persons previously removed for cause from Postal Service employment. William Smiley, the Field Director of Human Resources for the Detroit Division of the Postal Service, filed a declaration in which he explained the circumstances surrounding the Postal Service's refusal to reinstate plaintiff. He explained the policy against hiring persons discharged for cause and noted that a discharge for excessive absences constitutes discharge for cause.
 
 
 12
 Plaintiff filed her complaint with the Equal Employment Opportunity Commission ("EEOC") on March 1, 1989. An administrative law judge ("ALJ") found that at the time plaintiff filed for reinstatement, she "had a record of having physical impairments which substantially impaired her major life activities of performing manual tasks and working." The ALJ noted that the Postal Service policy statement permitted reemployment of persons discharged for cause in exceptional cases. The ALJ held that the Postal Service should have taken a closer look at why plaintiff was discharged in view of national policy that it be a model employee. The ALJ recommended reinstatement retroactive to February 8, 1989.
 
 
 13
 The Postal Service reversed this decision, finding that plaintiff's disability was temporary. Accordingly, plaintiff was not a handicapped person within the meaning of the Rehabilitation Act and that the refusal to reinstate her was not improper.
 
 
 14
 Plaintiff then filed this action against the Postal Service, claiming discrimination on the basis of handicap with respect to its denial of her request for reinstatement. Plaintiff later amended her complaint to include a charge of discrimination on the basis of handicap with respect to her initial discharge from employment with the Postal Service. The Postal Service filed a motion to dismiss or for summary judgment on plaintiff's claims of discrimination, arguing that plaintiff had failed to exhaust her administrative remedies in a timely manner as to her discharge claim, that plaintiff was not an individual with handicaps at the time she applied for reinstatement, and that an employer has no duty to accommodate an individual with a record or history of handicap.
 
 
 15
 The District Court found a genuine issue of material fact as to when plaintiff became aware that her termination was permanent; therefore, it denied the Postal Service's motion for dismissal to the extent that the motion argued that plaintiff failed to exhaust her administrative remedies in a timely manner. The court, however, granted the Postal Service's motion on other grounds and dismissed plaintiff's complaint in its entirety. The court held that plaintiff could not assert claims against the Postal Service under the Rehabilitation Act of 1973 because plaintiff did not come within the statutory definition of an "individual with handicaps." In so holding, the District Court reasoned that plaintiff's injuries were temporary and transient, and that transient impairments do not qualify a person as an "individual with handicaps." Alternatively, assuming that plaintiff was an individual with handicaps, the court found that an employer has no duty to accommodate a person with a record or history of impairments.
 
 
 16
 We agree with the Postal Service that plaintiff failed to exhaust her administrative remedies with respect to her discharge claim. Plaintiff's only filing with the EEOC was on March 1, 1989. The District Court held that filing timely, apparently based on plaintiff's claim that she didn't know she was fired until February 1989. Plaintiff testified on deposition, however, that she was notified by the Postal Service on September 22, 1987 that she was to be removed from service 30 days after that notice. She also testified that she knew at that time that "they were trying to fire me." She also testified that when her doctor told her she could return to work in April 1988, she did not try to return because she was fired. Her union confirmed that she was fired in June 1988. Plaintiff testified in her deposition that the union told her in June 1988 that she was removed and her grievance withdrawn. The Postal Service confirmed it twice by August 1988. Although she was assigned work in July 1988, the Postal Service both orally and in writing, by her own admission, immediately advised her that it was a mistake. She clearly did not see an EEO counselor within 30 days of the date she knew she was fired. Further, the March 1, 1989 EEOC filing concerned only plaintiff's claim she was denied reinstatement because of her handicap, although she later amended it to claim discrimination in her earlier discharge.
 
 
 17
 Plaintiff was required to exhaust her administrative remedies before filing this civil action. Smith v. United States Postal Serv., 742 F.2d 257, 261 (6th Cir.1984). Plaintiff was required to bring her discrimination complaints to an EEO counselor within 30 days of the alleged discriminatory action. Benford v. Frank, 943 F.2d 609, 612 (6th Cir.1991); 29 C.F.R. Sec. 1613.214(a)(1)(i) 1987. She did not do so. Plaintiff had no evidence to support her claim that she was unaware her termination was permanent. The Postal Service's motion was supported by plaintiff's own admissions. Plaintiff's discharge claim is time barred and the Postal Service was entitled to summary judgment on the discharge claim.
 
 
 18
 Plaintiff also claims that the Postal Service discriminated against herein refusing to reinstate or rehire her when she applied in November 1988. The District Court granted summary judgment on this claim on the basis that plaintiff was not a "handicapped person" within the meaning of the statute because her physical problems were temporary medical conditions. The Rehabilitation Act defines an "individual with handicaps" as any person who:
 
 
 19
 (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.
 
 
 20
 29 U.S.C. Sec. 706(8)(B).
 
 
 21
 Plaintiff does not claim under subsection (i) to have "a physical or mental impairment which substantially limits one or more of such person's major life activities."[1] She alleges that she has no physical or mental impairment at this time, but is fully able to perform her job requirements. Plaintiff claims to be a handicapped person under subsection (ii) of the Act due to her having a record of impairments. We, thus, have the anomalous situation of a plaintiff who has previously denied she was handicapped since she presented a medical report that she could work, who now claims that her absences during that period represent a record of handicap. The Postal Service claims there is no record of plaintiff having an impairment, just a record indicating that she was discharged for absenteeism. Having a record of impairment is defined in Taylor v. United States Postal Serv., 946 F.2d 1214, 1216 (6th Cir.1991), as having a "history of, or [having] been classified (or misclassified) as having a physical impairment that substantially limits one or more major life activities."
 
 
 22
 The District Court held that an employer has no duty to accommodate a person with a history of handicaps. However, plaintiff is not asking for an accommodation. She says she has a record of impairment which prevented her reinstatement. The parties did not address this issue separately in the motion for summary judgment in the District Court.
 
 
 23
 We do not know if we have all the information from which to discern what the Postal Service knew about the circumstances surrounding plaintiff's discharge at the time it denied her claim for reinstatement. Much of the material was merely attached to the complaint in various motions but is not in the form of affidavits or testimony required by Rule 56. Thus, we do not believe we should address the issue de novo. On remand, this matter can be further developed and the District Court can address the issue of whether or not plaintiff was denied reinstatement because she had a record of impairment.
 
 
 24
 Accordingly, the District Court's judgment dismissing plaintiff's discharge claim is AFFIRMED; the court's judgment dismissing plaintiff's reinstatement claim is REVERSED and this case is REMANDED to the District Court for further proceedings in accordance with this opinion.
 
 
 25
 BOYCE F. MARTIN, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 26
 I concur in the majority's decision to remand Veronica Avery's reinstatement claim to the district court for further consideration. I cannot agree, however, that Avery's discharge claim should be dismissed because she failed to file an Equal Employment Opportunity complaint with the Postal Service within the requisite thirty-day period.
 
 
 27
 There is no question that Veronica Avery was one of the less attentive employees of the United States Postal Service. Moreover, it is generally accepted that strict compliance with the Postal Service regulations promoting employee responsibility would reduce the cost of mail delivery in the United States. With these two premises in mind, however, I believe that no system that functions fairly can function outside of the rules governing employee discharge. Such rules should be carefully followed in all cases, no matter how poor the employment record of the employee might be, to ensure that employees are fairly treated and that administrators may readily enforce their personnel decisions.
 
 
 28
 It is undisputed that Avery's right to bring an action under the Rehabilitation Act contesting her discharge was conditioned on timely exhaustion of the available administrative remedies. Under the applicable regulations, Avery was required to bring her complaint of discrimination to the attention of an Equal Employment Opportunity Counselor "within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action." 29 C.F.R. Sec. 1613.214(a)(i); see also Benford v. Frank, 943 F.2d 609, 612 (6th Cir.1991) (federal employee asserting Title VII claims generally must initiate administrative process within thirty-day period). I believe Avery complied with this requirement.
 
 
 29
 While the Postal Service terminated Avery for excessive absenteeism on October 30, 1987, Avery was unaware that this discharge was final until she received a letter from the Postal Service denying her application for reinstatement on February 8, 1989. As the district court recognized, Avery justifiably could have believed that she was not permanently terminated until she received the February 8 correspondence:
 
 
 30
 First, the Union never notified her that her grievance had been dismissed. Second, the Postal Service notified plaintiff in June 1988 of her termination, but assigned her to work in July 1988. Finally, previous attempts to discharge plaintiff provided that once plaintiff was able to return to work she should reapply.
 
 
 31
 Joint Appendix at 178. While Avery was aware that the Postal Service was trying to fire her, the Postal Service's conflicting actions coupled with Avery's past experience gave her reason to believe--until conclusively notified otherwise on February 8, 1989--that her termination was not final. Because Avery contacted an Equal Employment Opportunity Counselor on March 1, less than thirty days after receipt of the February 8 letter, I cannot conclude that her discharge claim was time-barred.
 
 
 32
 I would, instead, remand Avery's discharge claim to the district court for further consideration. I believe Avery has established that she was an individual with handicaps within the meaning of the Rehabilitation Act at the time she was discharged from the Postal Service. See Taylor v. United States Postal Service, 946 F.2d 1214, 1218 (6th Cir.1991) (plaintiff suffering from degenerative disease in back and knees found to be a handicapped person within the meaning of the Rehabilitation Act); Hall v. United States Postal Service, 857 F.2d 1073, 1078 (6th Cir.1988) (plaintiff who sustained injury to right hip, foot, and back that limited ability to engage in excessive stretching and lifting deemed handicapped for purposes of the Rehabilitation Act). Although further proceedings might reveal that Avery was discharged because she was incapable of performing the essential duties of a clerical distribution clerk or that reasonable accommodation of Avery's handicap posed an undue burden on the Postal Service's operation, see Jasany v. United States Postal Service, 755 F.2d 1244, 1250 (6th Cir.1985), her discharge claim deserves further examination.
 
 
 
 [1]
 Neither can plaintiff, who is regarded as one who has been fired for cause, claim relief under subsection (iii)