47 F.3d 1170
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leonard TAYLOR, Plaintiff-Appellant,
v.
UNITED STATES POSTAL SERVICE and Anthony M. Frank, United
States Postmaster General Defendants-Appellees.
 No. 93-3502.
 United States Court of Appeals, Sixth Circuit.
 Feb. 10, 1995.
 
 On Appeal from the United States District Court for the Southern District of Ohio No. 89-00278; Jack Sherman Jr., United States Magistrate Judge.
 S.D.Ohio [APPEALING AFTER REMAND, 946 F.2d 1214].
 REVERSED.
 Before: KEITH, MARTIN, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Leonard W. Taylor appeals the district court's second decision in his discrimination suit brought under the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 et seq.. Claiming that, on remand, the district court violated the law of the case doctrine, Taylor urges this Court to reverse that decision and enter judgment in his favor on the issue of the United States Postal Service's liability. In addition, he disputes several of the factual findings that the district court made on remand. For the following reasons, we reverse and remand the case, once again, to the district court.
 
 
 2
 The Rehabilitation Act of 1973 is designed "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society," 29 U.S.C. Sec. 701(b)(1). In furtherance of this broad aim, the statute provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by ... the United States Postal Service," among other entities. 29 U.S.C. Sec.794(a). Thus, it provides a federal cause of action to disabled persons alleging certain types of discriminatory treatment. Under the Act, an "individual with a disability" is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. Sec. 706(8)(B).
 
 
 3
 The applicable regulations state that "working" is among a person's "major life activities." 29 C.F.R. Sec. 1613.702(c). In addition, an individual has a "record" of a physical or mental impairment if he has a history of that impairment or if he has been classified or misclassified as suffering from that impairment. 29 C.F.R. 1613.702(d). Moreover, if an employer treats an individual as if he suffers from a physical or mental impairment that substantially limits a major life activity, or if the individual actually suffers from such an impairment, but only as a result of an employer's attitude toward his impairment, that individual is "regarded" as having a physical or mental impairment. See 29 C.F.R. Sec. 1613.702(e) (emphasis added).
 
 
 4
 Initially, Taylor alleged that the Postal Service discriminated against him on the basis of his physical disability by refusing to hire him as a postal distribution clerk. Pursuant to 28 U.S.C. Sec. 636(c)(1), the parties consented to have the case decided by a United States Magistrate for unstated reasons. The magistrate determined that although Taylor's injuries did constitute a physical impairment with the meaning of the Rehabilitation Act, that impairment did not substantially affect one or more of his major life activities. In addition, the magistrate rejected Taylor's argument that he fell within the statute's protected class because the Postal Service "regarded" him as having a physical impairment that substantially limited a major life activity. Thus, concluding that Taylor had failed to establish that he was a "handicapped person," as the Rehabilitation Act then labeled protected individuals, the magistrate ordered that judgement be entered in favor of the Postal Service.
 
 
 5
 We reversed that decision on appeal, limiting our task to assessing whether Taylor qualified as a "handicapped person" under subpart two or subpart three of the Rehabilitation Act's definition. Taylor v. United States Postal Serv., 946 F.2d 1214, 1216 (6th Cir. 1991). Moreover, because Taylor failed to appeal the magistrate's conclusion regarding subpart one of the definition--that Taylor did not suffer from any physical impairment that substantially limited one of his major life activities--we declined to address that issue on appeal. Taylor, 946 F.2d at 1216 n.1. Although we did not ultimately determine whether Taylor established a "record" of an impairment that substantially limited one or more of his major life activities, we ruled that Taylor nevertheless met the Act's definition of a "handicapped person" because the Postal Service "regarded" him as having such an impairment. We also noted that "this perception substantially limited his ability to work." Id.
 
 
 6
 Acknowledging that "[t]he question as to whether an individual meets the statutory definition of handicapped under the act is best suited to a case-by-case analysis," id. at 1217 (citing Forrisi v. Bowen, 794 F.2d 931 (4th Cir. 1986)), we effectively determined that Taylor had established a prima facie case of discrimination. Accordingly, the burden shifted to the Postal Service "to demonstrate that the challenged criteria were job related and required by business necessity, and that reasonable accommodation was not possible." Jasnay v. United States Postal Service, 755 F.2d 1244, 1250 (6th Cir. 1985) (citing Prewitt v. United States Postal Service, 662 F.2d 292, 306-08 (5th Cir. 1981)). Thus, we remanded the case to the district court, instructing that "the Postal Service should be given an opportunity to demonstrate that the challenged criteria are [job] related and required by business necessity, and that reasonable accommodation is not possible." Taylor, 946 F.2d at 1218.
 
 
 7
 On remand, the magistrate, seemingly intent on denying Taylor the relief he requested, made "supplemental findings of fact," although neither party had presented new evidence. In several critical respects, these additional findings differed from the magistrate's original findings of fact. Taylor argues, and we agree, that the magistrate impermissibly re-decided certain facts on remand in the absence of any new evidence. Taylor contends, and again we agree, that by making "supplemental findings of fact," that contradicted earlier "findings of fact," the magistrate exceeded this Court's narrow mandate. The Postal Service, in turn, claims that the contested "supplemental findings of fact" pertain to issues not previously decided by either the magistrate or this Court on appeal. Thus, the Postal Service argues that the magistrate, on remand, was free to make such additional findings, because they fell beyond the scope of the law of the case doctrine and the mandate rule.
 
 
 8
 Under the law of the case doctrine, "findings made at one point in the litigation become the law of the case for subsequent stages of that litigation." United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994) (citing United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993)). The mandate rule, a related theory, "requires lower courts to adhere to the commands of a superior court." Id. Thus, on remand, a district court must "proceed in accordance with the mandate and the law of the case as established on appeal," implementing "both the letter and spirit of the mandate, [and] taking into account the appellate court's opinion and the circumstances it embraces." Id. (emphasis added) (quoting United States v. Kikumura, 947 F.2d 72, 76 (3d Cir. 1991)).
 
 
 9
 To determine whether the magistrate exceeded our prior mandate in this case, we must examine: "a) whether the loss issue was expressly or impliedly decided by this court in Defendant's first appeal, and b) whether this court's mandate to the district court was so narrow in scope as to preclude the district court from considering the loss issue." Id. Particularly in this case, the answers to those questions hinge upon the necessary implications of the magistrate's "supplemental findings of fact." Accordingly, we must determine whether the magistrate exceeded the bounds of his lawful discretion, in view of the contours of our prior decision.
 
 
 10
 In his original opinion, the magistrate relied upon certain "findings of fact" to reach his ultimate conclusion that Taylor failed to establish that he was a "handicapped person." After describing Taylor's history of knee, back, hip, and leg injuries, his coronary ailments, and his previous work experience in cursory fashion, the magistrate ruled that Taylor failed to show "that his physical impairment substantially affected one or more of his major life activities." To support this conclusion, the magistrate noted that Taylor presented no evidence "that his back or knee injuries in any way affect his ability to perform manual tasks such as standing, breathing, seeing, hearing, speaking, learning, or caring for himself." The magistrate also observed that Taylor "was not limited in his ability to perform major life activities," stressing that in the job he held then, Taylor spent two-thirds of each work day walking or standing, that he repeatedly lifted forty pound instruments, that he did a lot of bending and stooping, and that he once lifted a sixty pound weight without assistance. The magistrate then discounted Taylor's argument that his injuries prevented him from participating in sports, arguing that Taylor's testimony merely established that Taylor chose not to participate in sports, not that he was incapable of participating in sports. Finally, the magistrate highlighted the report of Dr. Christensen, which noted that Taylor's hypertension and angina were being "treated and controlled."
 
 
 11
 Failing to heed our direction on remand, the parties merely submitted additional briefs, and the magistrate heard oral arguments. Disregarding his earlier factfinding to the contrary, the magistrate stated that Taylor had "an extensive history of problems with his knees, his back and his heart," essentially reversing his original opinion as to Taylor's overall medical fitness. In this exercise, the magistrate discounted his earlier reliance on Dr. Christensen's report that Taylor's hypertension and angina were "currently treated and controlled" by finding that Taylor had suffered from several heart-related ailments since that earlier report. Our narrow mandate did not give the magistrate such unbridled reign to re-decide the facts. On remand, the magistrate determined that
 
 
 12
 [s]tanding, lifting, pushing, pulling, bending and stretching are all intricately involved in the various fundamental tasks required in the performance of a distribution clerk's job. There is no way to reasonably accommodate plaintiff by eliminating any of these requirements without eliminating an essential function of the job.
 
 
 13
 However, those observations contradict the magistrate's earlier and unchallenged findings, which we had affirmed: that Taylor spent two-thirds of each work day walking or standing, repeatedly lifted forty pound instruments, did a lot of bending and stooping, and once lifted a sixty pound weight without assistance.
 
 
 14
 Our mandate was not broad enough to accommodate this contradiction. The magistrate's "supplemental findings of fact" violated the letter and the spirit of that directive. Moored, 38 F.3d at 1421. The purpose of our remand was to give the Postal Service the opportunity to present new evidence in order to prove, first, that the challenged criteria were job related and required by business necessity, and second, that it could not reasonably accommodate Taylor. The Postal Service bore the burden of proof with regard to these issues. No new evidence was presented, however, and the magistrate reached his second decision on the basis of re-decided facts, instead.
 
 
 15
 Therefore, the judgment of the district court is reversed. The case is remanded with instructions to grant the relief sought to the plaintiff.
 
 
 16
 MILBURN Circuit Judge, dissenting.
 
 
 17
 I respectfully dissent, and I would hold that the district court did not violate the "mandate" rule and the related "law of the case" rule when it revisited factual issues it previously made in Taylor I. Under the Rehabilitation Act, two inquiries are necessary: (1) whether plaintiff is a "handicapped individual," and (2, if so, whether plaintiff is otherwise qualified in that he can meet each of a program's requirements in spite of the handicap. School Bd. of Nassau County, Fla. v. airline, 480 U.S. 273, 380-88 (1987). In Taylor I, the district court concluded that although plaintiff had a physical impairment, plaintiff was not a handicapped individual. On appeal, this court reversed and concluded that plaintiff was a handicapped individual. In reaching this conclusion, however, this court neither explicitly nor implicitly adopted the factual findings of the district curt relating to plaintiff's medical condition. Rather, in concluding that plaintiff was a handicapped individual, this court merely determined that plaintiff had "reestablished that he was 'regarded as having' a physical impairment and that this perception substantially limited his ability work." Taylor, 946 F.2d at 1218. Accordingly, when we remanded this case to the district court to determine in essence whether plaintiff was "otherwise qualified," an issue the district court had never reached, the district court was free to reconsider its previous factual findings as it related to this issue. Thus, because the district court was not constrained by its prior determinations on a wholly separate issue, I would hold that plaintiff's argument meritless. In this regard, it should be noted that plaintiff was afforded a six-day nonjury trial in the district court.
 
 
 18
 I would hold that the district court did not violate the "mandate" rule and the related "law of the case" rule when it revisited factual issues it previously made in Taylor I. Under the Rehabilitation Act, two inquiries are necessary: (1) whether plaintiff is a "handicapped individual," and if so, whether plaintiff is otherwise qualified in that he can meet each of a program's requirements in spite of the handicap. School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 280-88 (1987). In Taylor I, the district court concluded that although plaintiff had a physical impairment, plaintiff was not a handicapped individual. On appeal, this court reversed and concluded that plaintiff was a handicapped individual. In reaching this conclusion, however, this court neither explicitly nor implicitly adopted the factual findings of the district court relating to plaintiff's medical condition. Rather, in concluding that plaintiff was a handicapped individual, this court merely determined that plaintiff had "established that he was 'regarded as having' a physical impairment and that this perception substantially limited his ability to work." Taylor, 946 F.2d at 1218. Accordingly, when we remanded this case to the district court to determine in essence whether plaintiff was "otherwise qualified," an issue the district court had never reached, the district court was free to reconsider its previous factual findings as it related to this issue. Thus, because the district court was not constrained by its prior determinations on a wholly separate issue, I would hold that plaintiff's argument meritless. In this regard, it should be noted that plaintiff was afforded a six-day nonjury trial in the district court.
 
 
 19
 "[T]he determination of whether physical qualifications are essential functions of a job requires the court to engage in a highly fact-specific inquiry." Hall v. United States Postal Serv., 857 F.2d 1073, 1079 (6th Cir. 1988). A court's fact-specific inquiry "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." Tuck v. HCA Health Servs. of Tenn., Inc., 7 F.3d 465, 472 (6th Cir. 1993) (internal quotations omitted). As noted by the Eleventh Circuit and adopted by this court:
 
 
 20
 While legitimate physical qualifications may be essential to the performance of certain jobs, both that determination and the determination of whether accommodation is possible are fact-specific issues. The court is obligated to scrutinize the evidence before determining whether the defendant's justifications reflect a well-informed judgment grounded in a careful and open-minded weighing of the risks and alternatives, or whether they are simply conclusory statements that are being used to justify reflexive reactions grounded in ignorance or capitulation to public prejudice.
 
 
 21
 Arline v. School Bd. of Nassau County, 772 F.2d 759, 764-65 (11th Cir. 1985) (citations omitted) (adopted in Hall, 857 F.2d at 1079), aff'd, 480 U.S. 273 (1987).
 
 
 22
 I would hold that the district court did not err in defining the job criteria of the position of distribution clerk and whether such job criteria were required by business necessity. The district court specifically found that "[t]he distribution clerk position, as it is performed at Franklin, Ohio, Post Office, includes lifting heavy sacks of letter mail, paper mail and parcel post weighing up to 70 lbs., as well as continuous standing, stretching, reaching, walking, pushing and pulling." J.A. 53. These findings were based upon the United States Post Office's job description for distribution clerk as well as the conclusions made by Dr. Rose O. Hayes, Ph.D., an ergonomics expert who evaluated the Franklin Post Office Distribution Clerk job for six hours on May 9, 1990. Given the ample evidentiary support for the district court's findings, we will not disturb them on appeal. I disagree that the Postal Service was required, after going through a six-day trial to present new evidence on remand. There was ample evidence in the record to support the district court's findings on remand.
 
 
 23
 I would hold that the district court did not commit clear error in holding that plaintiff cannot perform the essential functions of distribution clerk. Contrary to plaintiff's suggestion that Dr. Christensen believed that plaintiff could perform the duties at issue, the views of Dr. Christensen in fact support the opposite conclusion, as is evident from his testimony at trial describing why he believed plaintiff was ill-suited for the job of distribution clerk:
 
 
 24
 [Plaintiff] just had too many, too many things, too many things going on with him. I mean, if he'd had -- if he'd just had back surgery, I mean, we hire people who have had back surgeries. If he just had the back surgery, there wouldn't have been all this mess. He would have been hired doing something. If he had just had knee surgery, he would have eventually have been hired doing something. If he just had high blood pressure, that would not have been a major consideration. If he just had had an episode of heart pain, which was treated and no further problems, then he would have been hired doing something. But when you put all four of these together, all four problems together, previous back surgery, previous knee surgery, high blood pressure, coronary artery disease and heart problems, I had -- after getting this far in this evaluation, it was my opinion that irregardless -- I mean, not -- just avoiding any one particular problem and putting them all together, putting him into some of these positions, he would have been -- he would have been ill or injured within a very short period of time. He would have been a hazard to himself.
 
 
 25
 J.A. 909-10. This testimony alone provides ample evidence to conclude that plaintiff could not perform the duties required, especially given the fact that Dr. Christensen was thoroughly familiar with the distribution clerk position and the duties it entailed.
 
 
 26
 I would further hold that the district court did not commit clear error in finding that plaintiff could not perform the essential functions of the distribution clerk position based on his heart condition. In January 1987, Dr. Doran Christensen, the Postal Service's Field Medical Officer, noted in a letter to a manager for personnel services that plaintiff was medically unsuitable for the position of distribution clerk, among others. As part of his conclusion, Dr. Christensen not only referred to plaintiff's history of knee and back problems but also referred to plaintiff's heart condition, specifically noting that plaintiff "has previous history of hypertension and angina which is currently treated and controlled." J.A. 108-A. At trial, Dr. Christensen elaborated on the reason why he found plaintiff unsuitable for the position of distribution clerk, stating that plaintiff's heart condition combined with his knee and back injuries would have made him a hazard to himself if given the position of distribution clerk. Other evidence provided that on several occasions since plaintiff was denied employment, he has had serious episodes of chest pain consistent with coronary artery disease. Based on this information, the district court could have determined that plaintiff's heart condition rendered him unable to carry out the essential functions of a distribution clerk.
 
 
 27
 Finally, I would hold that the district court did not commit clear error in determining that there are no reasonable accommodations which would enable plaintiff to perform the essential functions of a distribution clerk. As found by the district court, the essential functions of a distribution clerk at the Franklin, Ohio, Post Office
 
 
 28
 involve receiving mail in bulk, manually moving it, sorting it and distributing it to various locations within the post office facility. The performance of these essential tasks requires a high degree of physical movement by the distribution clerk, including repetitive and constant standing, walking, bending, lifting, reaching, stretching, pushing and pulling.
 
 
 29
 J.A. 64. If the Postal Service were to adopt any of plaintiff's reasonable accommodation suggestions, the Postal Service would have to eliminate many of the essential elements of the position of distribution clerk. For instance, according to the testimony of Dr. Christensen, plaintiff could not perform the essential functions of the position of distribution clerk because of the repetitive nature of the job and the constant movements that the job required. None of the suggestions proposed by plaintiff provide a method in which plaintiff would still be able to carry out the essential functions of distribution clerk and at the same time eliminate the repetitive and strenuous nature of that position. Instead, plaintiff's suggestions merely seek to rewrite the essential functions of the position in order to accommodate his handicap. Accordingly, I would affirm the district court.