John HATFIELD, et al., Plaintiffs,

v.

QUANTUM CHEMICAL
CORPORATION, et
al., Defendants.

Civil Action No. H–95–3592.

United States District Court,
S.D. Texas,
Houston Division.

April 2, 1996.

Donald H. Cahilly, Houston, Texas, for
Plaintiffs.

Thomas Howard Wilson, Houston, Texas,
for Defendants.

OPINION ON SUMMARY JUDGMENT

LYNN N. HUGHES, District Judge.

## 1. *Introduction.*

John Hatfield is a former employee of defendant Quantum Chemical Corporation. He claims Quantum violated his rights under the Americans with Disabilities Act when it refused to transfer him from a supervisor who had been harassing him. *See* 42 U.S.C. § 12101. Hatfield says that his mental condition resulted from his interaction with his supervisor and that it made him disabled. Because Hatfield cannot show that he is statutorily disabled, Quantum's refusal to accommodate Hatfield by transferring him to another supervisor did not violate federal law. Even if Hatfield was disabled, he cannot recover because he was not qualified to perform the essential functions of his job at the time he requested a transfer.

## 2. *Background.*

Hatfield began working as a process technician at Quantum's Deer Park plant in February 1991. Hatfield spent the first several months in technical training. After only a few weeks of training, Hatfield became unhappy with his assigned trainer and complained to his shift supervisor. When that supervisor took no action, he complained to the human resources supervisor, who transferred Hatfield to another trainer and shift. On completing his training, Hatfield was promoted and assigned to another shift.

About nine months into his employment, Hatfield began to have problems with another Quantum employee, his day shift supervisor. As part of his job, Hatfield was required to turn off a material feed line to take samples. When Hatfield forgot to turn it back on after taking a sample, the supervisor chastised him for forgetting something so simple. The supervisor told him that if he had it his way, he would fire him.

After this incident the supervisor began to harass Hatfield. He would sometimes summon Hatfield by calling him "pussy." In the spring of 1992, Hatfield had injured his back on the job. When he approached the supervisor about getting time off to see a chiropractor, the supervisor responded by telling Hatfield to get underneath his desk and perform oral sex on him. The supervisor then laughed and walked off. In May of 1992, Hatfield was standing by a water fountain when the supervisor grabbed the back of his head and pulled it towards the supervisor's groin and asked if he was ready to perform oral sex on him. Hatfield did not complain to anyone at Quantum about these incidents.

In late August or early September, Hatfield met with a representative of Quantum's employee assistance program about seeing a psychiatrist. The representative referred Hatfield to a psychiatrist who recommended that he enter Deer Park Neurological Hospital. Complaining of excessive stress and feeling like he was "going to lose it," Hatfield checked into the hospital on September 22, 1992. Hatfield's doctor noted in his medical record:

> The patient dated the onset of his present illness sometime in the distant past but definitely very much worse during the past year and especially so in the past two months. He had ... much difficulty with his supervisor at work and felt that he generally was being harassed by people at work.

After entering the hospital, Hatfield called Quantum to inform them that he would miss work. He did not give a reason for his hospitalization or complain about the supervisor.

Hatfield was discharged on October 2 with a diagnosis of recurrent major depression and family and occupational problems, but he was readmitted on October 6. He was again discharged on October 12, with a diagnosis of severe major depression, post-traumatic stress disorder, and borderline personality disorder.

On November 11, Hatfield, his doctor, his counselors, and a representative of Quantum attended a back-to-work conference. Hatfield complained for the first time about the supervisor at this conference, and Hatfield's doctor requested that the company transfer him from the supervisor. Quantum offered Hatfield his earlier position but refused to transfer him.

110

3. *Elements.*

■ To qualify for relief under the ADA, a worker must establish that he is (1) "disabled" within the meaning of the act; (2) qualified (with no more than a reasonable accommodation) to perform the essential functions of the job and; (3) suffering from an adverse employment action because of his disability. 42 U.S.C. § 12101; *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir. 1993) (*cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)).

4. *Disabled.*

The act defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities ..." 42 U.S.C. § 12102(2). According to the appendix to the guidelines announced by the EEOC, "major life activities" are those "that the average person in the general population can perform with little or no difficulty." 29 C.F.R. § 1630.2(i), App. These include walking, seeing, hearing, speaking, breathing, lifting, and learning. *Id.*

■ Hatfield says he is statutorily disabled because his mental condition, caused by his interaction with his supervisor, substantially limited his ability to "care for himself." Although referred to separately as a major life activity, the inability to care for oneself is simply the collective inability to do a combination of the various physical activities that make up the abstraction of "caring for oneself."

■ Despite his emotional condition, Hatfield's testimony shows that he can care for himself. He can groom himself; drive a car; have lunch with his friends at restaurants; cook meals for himself and his family; work in his yard; and clean his house. Not only can Hatfield care for himself, but he can also care for his family. Hatfield offers no evidence on which a jury could find that his mental impairment substantially limited him in his ability to care for himself.

■ Even if the court found Hatfield unable to care for himself and, therefore, disabled, he could not meet the second requirement under the act—that he was qualified to perform the essential functions of his job. It

is logically inconsistent for Hatfield to say he is so impaired that he cannot care for himself, while at the same time saying that he can go to work and perform his job. If Hatfield could not, for example, feed himself, comb his hair, or move around, then he could not possibly perform the duties required of a plant technician.

Hatfield also contends that his mental condition renders him substantially limited in his ability to work as a plant technician. A person is substantially limited in working if the person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs.... The inability to perform a single, particular job does not constitute a substantial limitation on working." 29 C.F.R. § 1630.2(j)(3)(i).

■ Hatfield presents no evidence that his condition prevents him from performing either a class of jobs or a range of jobs in whatever class. Hatfield's testimony shows that the only reason he could not return to work was that he would be in contact with his former supervisor. Hatfield testified at his deposition:

Q. Well, is there anything else that would have prevented you from being able to return to work other than your problems with [your supervisor]?

A. To the best of my knowledge, no, sir.

Hatfield can perform all of the activities required of a plant technician; he just does not want to do them around his supervisor. As conceded in Hatfield's response to the motion for summary judgment, his inability to work under a particular supervisor simply is not a substantial limitation on working in the same sense that a physical disability is a limitation. Hatfield, therefore, is not "disabled."

5. *Qualified Individual.*

Quantum argues that even if Hatfield was statutorily disabled, it did not have to accommodate him because at the time he requested an accommodation, Hatfield, by his own admission, was unable to perform the essential functions of his job. If that is true, he was not a "qualified individual with a disability." *See* 42 U.S.C. § 12111(8). The court agrees.

On February 17, 1993, Hatfield filed a claim for long-term disability insurance benefits through Quantum's insurance carrier. In his application, Hatfield said that he was totally disabled on September 22, 1992, the date of his first hospitalization, which was six weeks before he requested that Quantum transfer him at the back-to-work conference. Hatfield's application was later approved, and he began receiving disability benefits.

Hatfield also admits applying for and receiving disability income benefits through Social Security. Although the application is not in the record, Hatfield does admit to receiving those benefits. We must infer that he represented to the Social Security Administration that he was disabled, beginning on at least March 1, 1993, the effective date of those benefits.

Hatfield's representation that he was "totally disabled" on September 22, 1992, in his claim for long-term disability benefits with Quantum, by itself, is enough to conclude that Hatfield was not a "qualified individual with a disability" after September 22. As a result, he was not a "qualified individual with a disability" when Quantum refused to transfer Hatfield at the back-to-work conference.

## 6. *Conclusion.*

Hatfield is not disabled as a matter of law because he presents no summary judgment evidence that he is substantially limited in a major life activity as required by the act. Even if Hatfield could demonstrate the existence of a disability, he cannot recover because he is not a qualified individual. By Hatfield's own admission, he is totally disabled.

John Hatfield will take nothing on his claims; because Leanne Hatfield's claims are wholly derivative of her husband's, she takes nothing.

### FINAL JUDGMENT

John Hatfield and Leanne Hatfield take nothing from Quantum Chemical Corporation and Ken Buchanan.