Bradley T. VAN SICKLE, Plaintiff,

v.

AUTOMATIC DATA PROCESSING, INC., a Delaware Corporation, Defendant.

No. 95–CV–10335–BC.

United States District Court, E.D. Michigan, Northern Division.

Feb. 7, 1997.

Michael L. Pitt, Royal Oak, MI, for Plaintiff.

Daniel D. Swanson, Southfield, MI, for Defendant.

### *CORRECTED OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

CLELAND, District Judge.

## I. Introduction

This matter is before the court on defendant Automatic Data Processing's ("defendant's") Motion for Summary Judgment, filed October 23, 1996. Plaintiff Bradley Van Sickle ("plaintiff") has responded. The court held oral argument on the motion on December 4, 1996, and the motion is now ripe for disposition.

On June 17, 1991, defendant hired plaintiff as a Key Account Executive ("KAE") for the Michigan territory. The job of a KAE is to sell defendant's computer systems to small and mid-sized automobile dealers. In the latter part of 1993, his manager recommended him for a promotion to Major Account Executive ("MAE"). The job of an MAE is to sell defendant's computer systems to larger, multi-store automobile dealerships, defendant's largest customers. Plaintiff was

promoted in November 1993, and began his new position in January 1994. His new manager was Chris Dulla. Dulla's direct supervisor was Jeff Fields, the vice president of sales.

On April 15, 1994, plaintiff was in a car accident in which he suffered several injuries, including a facial laceration. As a result of the laceration, plaintiff has a six-inch scar along his chin line.

Plaintiff claims that on three occasions, his supervisors called him "scar face". On one of those occasions, in July 1994, plaintiff was attending the Chicago Region International Training Seminar. In front of the attendees, including other MAEs and sales-related people, Fields asked plaintiff to make a statement regarding why his performance had dropped off. Fields allegedly introduced plaintiff as "Bradley Van Sickle, 'scar face' ". In December 1994, Dulla stated, during the closing of the Mel Farr deal, that "[w]hen we have these tough accounts, we will send in 'Scar Face Van Sickle' to work on the tough deals." (Van Sickle Dep. at 72–73.) Finally, in February 1995, Dulla referred to plaintiff as "Scar Face Van Sickle" in front of the Graff representatives at a meeting. Dulla's statement was similar to that made in the Mel Farr incident. (Van Sickle Dep. at 63–64.)

Plaintiff failed to achieve his quota for the fiscal year ending June 30, 1994, achieving only 76% of his quota. Plaintiff contends that he should be given credit for a deal with the Graff dealership, which would bring him to 200% of quota.[1]

Defendant received numerous complaints about plaintiff from customers. Troy Ford and Suburban Auto Group demanded that plaintiff be removed as their sales representative; Dulla did remove plaintiff from those accounts. (Dulla Dep. at 106–07; Hnilicka Aff. at ¶ 6.) Complaints from Jack Demmer Ford indicated that they no longer wished to deal with plaintiff because of his inattentiveness. (Dulla Dep. at 82; Demmer Aff. at ¶¶ 5–7.) Other dealerships have expressed dissatisfaction with plaintiff. (Dulla Dep. at

86–87, 90–92; Benmark Aff. at ¶ 8; Scott Aff. at ¶ 9.)

In October 1994, Dulla wrote to plaintiff that his performance in several respects was inadequate. (Def.Br., Exh. A.) Plaintiff met several weeks later with Dulla and Fields to discuss his performance, and plaintiff created a list of functions he needed to improve upon. (Def.Br., Exh. B.) One of those problems was that plaintiff was not preparing his own proposals. Plaintiff promised to start preparing them, but never did. (Van Sickle Dep. at 179–80.) In one incident, Dulla and Fields joined plaintiff the day before a major presentation to the Mel Farr dealerships. When they arrived, they discovered that plaintiff had not yet prepared a proposal. Fields and Dulla created the presentation prior to the meeting; Fields expressed his indignation with plaintiff's actions. (Fields Dep. at 119–20.)

On April 20, 1995, defendant terminated plaintiff's employment. Plaintiff thereafter sued for violations of the Americans with Disabilities Act and the Michigan Handicappers' Civil Rights Act.

## II. Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The existence of some factual dispute does not defeat a properly supported motion for

---

1. Plaintiff allegedly worked for two years on landing the Graff account. His successor completed the deal shortly after plaintiff's termination and was given credit for the deal.

summary judgment; the disputed factual issue must be material.

The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which the non-moving party would bear the ultimate burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. But the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. Once the moving party meets this burden, the burden passes to the non-moving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element necessary to his or her case with respect to which he or she bears the burden of proof. *Id.* at 323, 106 S.Ct. at 2552. The non-moving party must show that there is sufficient evidence for a jury to return a verdict in its favor, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989), *i.e.*, that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Id.* at 1476. The non-moving party must present affirmative evidence on critical issues. *Id.* at 1477.

## III. Discussion

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, prohibits discrimination on the basis of handicap. The statute states:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (Supp.1995).

■ In cases under the ADA, the Sixth Circuit uses a burden-shifting type analysis similar to that used in cases under Title VII.[2] *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173 (6th Cir.1996). First, plaintiff must set forth a *prima facie* case of discrimination. To do so, plaintiff must show:

1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Monette*, 90 F.3d at 1186. If the plaintiff satisfactorily meets these initial requirements, the burden shifts to the defendant to offer a legitimate business-related explanation for its actions. *Id.* If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's explanation was a pretext for actual discrimination. *Id.*

## A. Workers' Compensation Claim

■ Defendant first argues that plaintiff is not a qualified individual with a disability within the meaning of the ADA because he has submitted a worker's compensation claim which has the effect of admitting that he is totally disabled. Defendant asserts that if plaintiff is totally disabled, he is unable to perform his job, and thus cannot recover on a claim of handicap discrimination. Plaintiff argues that his worker's compensation claim does not mean that he is either partially or totally disabled and that plaintiff did not make any statements in his claim form to that effect. Rather, plaintiff contends that in Michigan anyone whose wage-earning capacity has diminished or is in need of medical services can recover worker's compensation. Plaintiff further represents that he has withdrawn his application for worker's compensation benefits.

The cases which defendant cites to support its argument in this regard all appear to be cases in which the applicants made either sworn statements in their applications that they were totally disabled or direct statements that they were totally disabled. *See,*

2. Because claims of discrimination under the Americans with Disabilities Act parallel those under the Michigan Handicappers' Civil Rights Act, M.C.L.A. § 37.1102, the analysis of and dis-

position of the Michigan claim is identical to that of the federal claim. *Monette v. Electronic Data Syss. Corp.*, 90 F.3d 1173, 1178 n. 3 (6th Cir. 1996).

*e.g., Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996) (plaintiff applied for "workers' compensation temporary total disability benefits"); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996) (plaintiff made sworn statements that she was totally disabled on claim for disability benefits); *McNemar v. The Disney Store, Inc.,* 91 F.3d 610, 618 (3d Cir.1996) (plaintiff made sworn statements in application for disability benefits that he was totally disabled); *Hatfield v. Quantum Chemical Corp.,* 920 F.Supp. 108 (S.D.Tex.1996) (plaintiff claimed in seeking long-term disability that he was totally disabled); *Harden v. Delta Air Lines,* 900 F.Supp. 493, 496–97 (S.D.Ga.1995) (plaintiff claimed on long-term disability form that he was totally disabled); *Garcia–Paz v. Swift Textiles,* 873 F.Supp. 547, 554 (D.Kan.1995) (plaintiff claimed on long-term disability form that she was totally disabled); *Reigel v. Kaiser Foundation Health Plan,* 859 F.Supp. 963, 970 (E.D.N.C. 1994) (plaintiff certified that she was totally disabled in application for disability benefits).

This case is very different from those cited by defendant. On the claim form in this case, plaintiff was not asked and did not state that he was *totally* disabled. In fact, employees do not need to be totally disabled to recover worker's compensation benefits in Michigan. *See, e.g., Rea v. Regency Olds/Mazda/Volvo,* 450 Mich. 1201, 536 N.W.2d 542 (1995). Plaintiff states that a claim for worker's compensation does not lead to the inference that the applicant is totally disabled. Defendant appears to assume that an application leads to the inference that the applicant is totally disabled, even if no specific statements are made to that effect. The court finds that because *Rea* states that a disability claim may be made even if a worker is not totally disabled, the defendant's argument on this point fails.

## B. Prima Facie Case

Defendant's second argument is that plaintiff cannot establish a claim of handicap discrimination because plaintiff cannot demonstrate that he is disabled, that he is qualified to perform the essential functions of the job, or that he was terminated because of his disability. Plaintiff disagrees.

### 1.

Defendant argues that a scar cannot be a handicap under either the federal or state statutes because plaintiff's scar does not limit any of his major life activities. The act defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (Supp.1995). Federal regulations define "impairment". An impairment can be either mental or physical, including:

Any physiological disorder, or condition, *cosmetic disfigurement,* or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. . . .

29 C.F.R. § 1630.2(h)(1) (1996) (emphasis added). Therefore, plaintiff's scar can constitute a "disability" if it has the effect of substantially limiting his major life activities. The regulations define work as a major life activity, 29 C.F.R. § 1630.2(i) (1996), so the parties' real dispute centers around the meaning of "substantially limiting".

Plaintiff contends that in this case, he is not substantially limited in his major life activity of working, but that defendant perceives him to be so limited. A person who is "regarded as having such an impairment" is defined as a person who:

(1) [h]as a physical . . . impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) [h]as a physical . . . impairment that substantially limits major life activities only as a result of the attitude of an employer toward such an impairment; or (3) [h]as none of the impairments defined in paragraphs (h)(1) or (2) of this section but is treated by an

employer as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1) (1996). In determining whether an impairment substantially limits an individual's major life activities, courts have focused on the degree to which the impairment precludes that individual from participating in his or her activities. The general rule that has emerged is that "an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment was not substantially limiting within the meaning of the statute." *Taylor v. United States Postal Serv.*, 946 F.2d 1214, 1217 (6th Cir.1991). *See also Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir.1985); *Forrisi v. Bowen*, 794 F.2d 931, 934–35 (4th Cir.1986); *Venclauskas v. State of Connecticut, Dep't of Public Safety Division of State Police*, 921 F.Supp. 78, 82 (D.Conn.1995); *de la Torres v. Bolger*, 610 F.Supp. 593, 596–97 (N.D.Tex.1985), *aff'd*, 781 F.2d 1134 (5th Cir. 1986); *Tudyman v. United Airlines*, 608 F.Supp. 739, 745 (C.D.Cal.1984).

■ It is plaintiff's burden to provide evidence that defendant treated him as substantially limited in his ability to work in order to create a genuine issue of material fact. That defendant commented upon plaintiff's scar or that defendant treated plaintiff as if he had a scar is not sufficient to demonstrate that defendant treated plaintiff as substantially limited in his ability to work.[3] *See generally Nedder v. Rivier College*, 944 F.Supp. 111 (D.N.H.1996); *Marschand v. Norfolk & W. Ry. Co.*, 876 F.Supp. 1528, 1540–41 (N.D.Ind.1995), *aff'd*, 81 F.3d 714 (7th Cir.1996). That defendant fired plaintiff likewise is not sufficient. Plaintiff must show that defendant perceived plaintiff to have an impairment which substantially limited a major life activity. *Jasany*, 755 F.2d at 1250. Plaintiff attempts in part to create a genuine issue of material fact by offering his own conclusory statements regarding defendant's

reasons for terminating him. The court finds these do not create a genuine issue of material fact because plaintiff's beliefs about why he was terminated do not suffice as proof as to the reasons he was fired.

■ Plaintiff additionally points to the testimony of co-worker Eric Ostergren to support his allegations that defendant believed plaintiff to be substantially limited in his ability to work. The deposition testimony of Eric Ostergren does not suffice to prove that Dulla regarded plaintiff's scar as constraining his abilities. Ostergren testified that Dulla made references to plaintiff's scar on different occasions. His deposition testimony sets forth the following:

Q: What was the context in which Mr. Dula [sic] made these remarks about Brad's scar?

A: I believe he felt that they were hurting his ability to sell systems. As I mentioned earlier, with Chris [Dulla] it was more of a mean-spirited type of a comment that was made.

(Ostergren Dep. at 32.) Ostergren further testified:

Q: You testified that he [Dulla] made some comment along those lines. What exact words did Dula [sic] use in reference to that scar?

A: I can't remember the exact words.

Q: You used the words, to paraphrase it, something like scarface. It's just real important. I want you to sit and think if you need the time, what words did Dula [sic] use in reference to Van Sickle?

A: I can't remember exactly. I really can't. That would be unfair.

(Ostergren Dep. at 115–16.)

The logical inference of Ostergren's deposition testimony is that Dulla did not directly address any effect plaintiff's scar may have had on his job or his ability to perform sales positions generally, but that Ostergren pre-

---

3. Plaintiff claims that Fields called him "scar face" at a meeting in Chicago. (Pl.Br., Van Sickle Dep. at 16–17.) Plaintiff claims that Dulla called him "scar face" at two different client meetings in late 1994 and early 1995. (Pl.Br., Van Sickle Dep. at 72–73.) Defendant submits

much evidence in support of its claim that plaintiff is fabricating this. The court, of course, will assume that Messrs. Fields and Dulla did make these comments because the court is required to take the evidence in the light most favorable to plaintiff, the non-moving party.

sumed that to be the implication of whatever Dulla's references to plaintiff's scar may have been. Ostergren was asked, specifically and on at least two occasions at deposition, exactly what Dulla said. He could not answer. Without any evidence to tie the "scarface" comments to plaintiff's termination, the court finds that there is no genuine issue of material fact on this issue: whether defendant perceived plaintiff as substantially limited in his ability to work. Defendant is thus entitled to summary judgment.

The court has ruled already that a recently-offered affidavit of Ostergren is inadmissible. (*See* Order Denying Plaintiff's Motion to File Affidavit of Deponent Eric Ostergren and Order Suspending Dates, filed January 24, 1997.) However, the court will consider, in the alternative, the result that would follow if that affidavit were admitted. The affidavit attests that "[t]he reason Mr. Dula [sic] felt that his [plaintiff's] scar was hurting his ability to sell computer systems is the fact that Mr. Dula [sic] told me that." (Letter attached to and incorporated in Ostergren Aff.) Taken in the light most favorable to plaintiff, this statement does tie plaintiff's termination to defendant's perception of plaintiff's alleged disability.

■ However, plaintiff must prove more than a link between defendant's perception and his termination. Plaintiff must demonstrate that defendant perceived plaintiff as being substantially limited in a major life activity, presumably work. Ostergren's affidavit can be read narrowly and literally, as proof solely of the fact that Dulla perceived that plaintiff's scar "hurt[ ] his ability to sell computer systems", or more generously, as evidence that Dulla perceived plaintiff's scar as affecting his ability to sell in general. Courts have noted that the determination of whether the impairment, or perceived impairment, is a "substantial" handicap to employment should be made on a case-by-case basis. *Cook v. State of Rhode Island Dep't of Mental Health, Retardation, and Hospitals,* 10 F.3d 17, 25 (1st Cir.1993); *Taylor,* 946 F.2d at 1217 ("The question as to whether an individual meets the statutory definition of handicapped under the Act is best suited to a case-by-case analysis."); *Forrisi,* 794 F.2d at

933 ("The inquiry is, of necessity, an individualized one—whether the particular impairment constitutes for the particular person a significant barrier to employment.").

■ Factors the Sixth Circuit has used before in determining whether an impaired person's work-related opportunities have been "substantially" limited include "the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training." *Jasany,* 755 F.2d at 1249; *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1100–02 (D.Haw.1980). Therefore, where criteria used to exclude a potential employee or to relegate an employee to certain duties are unique to a particular employer and would not exclude employment for a different employer or employment at a different position, that individual is generally not considered handicapped. *See, e.g., Venclauskas,* 921 F.Supp. at 82 (fact that plaintiff did not have sufficient visual acuity to work as trooper for state police did not render plaintiff substantially limited in major life activity because he could work for other police forces); *Tudyman,* 608 F.Supp. at 745 (fact that plaintiff was over defendant's weight limit, and thus could not work as a flight attendant, did not mean that plaintiff was substantially limited in his major life activities); *Forrisi,* 794 F.2d at 934–35 (fact that plaintiff, a utility systems repairer, was acrophobic and therefore could not work for defendant company that required plaintiff to climb stairs and ladders, did not render plaintiff substantially limited in major life activity).

■ As noted earlier, in order to rise to the level of a substantial limitation of a major life activity, an impairment must significantly decrease an individual's ability to obtain reasonably satisfactory employment in a given field. 29 U.S.C. § 706(8)(B); 42 U.S.C. § 12102(2). An impairment which merely prevents an individual from performing a particular job is not "substantially limiting" within the meaning of the Americans with Disabilities Act, *Taylor,* 946 F.2d at 1217, because an impairment must "foreclose gen-

erally the type of employment involved." *Forrisi,* 794 F.2d at 935.

If Ostergren's statement is read in the narrow sense, it proves nothing more than that Dulla perceived plaintiff's scar as preventing him from doing one job, i.e., the job of an MAE. This is not sufficient to prove a substantial limitation. *Taylor,* 946 F.2d at 1217. Under this reading of the affidavit, therefore, defendant would be entitled to summary judgment.

On the other hand, if Ostergren's affidavit is read more liberally, as proof that Dulla perceived plaintiff's scar to prevent plaintiff from performing work in sales generally, the question becomes whether "sales" includes a broad enough range of jobs to allow a conclusion that plaintiff is "substantially limited". The issue of what constitutes a "substantial limitation" was not addressed in substance by either party in their briefs. Defendant first raised the issue at oral argument; neither party presented any evidence on the issue. Although it is plaintiff's affirmative burden to provide evidence on all contested issues, plaintiff did not have an opportunity to respond to this issue given the point in the proceedings that it was raised. The court therefore finds that summary judgment on this alternative issue at this stage of the proceedings would be inappropriate.[4] With the affidavit read liberally, plaintiff would withstand summary judgment on the "substantial limitation" prong of a *prima facie* claim of handicap discrimination, but for reasons explained below, defendant ultimately is entitled to summary judgment.

**2.**

 Defendant contends that plaintiff cannot recover on his claim of handicap discrimination because plaintiff cannot perform the essential functions of an MAE, another element of a *prima facie* case of handicap discrimination. *Monette,* 90 F.3d at 1186. Plaintiff contends that he can perform his job functions. As proof of this, plaintiff provides

evidence that although he did not achieve quota at the end of the year, through most of the year he was just above his quota. (Pl. Br., Van Sickle Dep. at 165.) Plaintiff would have ended the year at 200% of quota if the Graff account had been included in his sales figures. (Id.)

Defendant provides evidence that demonstrates that plaintiff was not performing his job functions in a manner satisfactory to defendant. Fields and Dulla both warned plaintiff that they were unhappy with his performance in October 1994. The warning included dissatisfaction with the following: that plaintiff sought only to win over the dealer, to the exclusion of the internal support personnel; that plaintiff did not prepare his own proposals or return on investment analysis; that plaintiff did not tailor his sales strategy for each dealer; that plaintiff lived quite a distance from work and did not have a car phone. (Def.Br., Exh. A.) In a memorandum to the personnel file, Dulla outlined a discussion he and Fields had with plaintiff regarding these problems and that plaintiff had committed to improving. At this point, his supervisors warned plaintiff that continued delinquency may result in termination. (Def.Br., Exh. C.) Dulla wrote similar memoranda and letters in the following months, indicating that plaintiff was not living up to expectations or to his own promises. (Def.Br., Exh. B, D, E, F.)

In response to this evidence, plaintiff contends that defendant's statements are inaccurate. As to defendant's dissatisfaction with plaintiff's failure to prepare his own return on investment proposals, plaintiff states that defendant encouraged each MAE to use his or her own approach. (Ostergren Dep. at 48.) Additionally, when plaintiff worked as a KAE, he did not have to prepare proposals on his own, and usually worked with his supervisor to complete them. (Van Sickle Dep. at 160.) Dulla knew of this when plain-

---

4. The court did locate one federal decision that addressed the issue of whether sales constitutes a broad range of jobs. In *Derbis v. United States Shoe Corp.,* 1994 WL 631155 (D.Md. September 7, 1994) (unpublished op.), the District Court for the District of Maryland held that where plaintiff had raised a genuine issue of material fact that

defendant perceived her as being incapable of working in sales generally, rather than in sales at defendant corporation. The court concluded that plaintiff's case survived summary judgment since there was a question whether plaintiff was prevented from working in a broad range of jobs.

tiff was promoted, (Dulla Dep. at 30–31), and Fields believed that plaintiff's former supervisor could fill in when plaintiff could not complete a proposal. (Fields Dep. at 34.) Finally, plaintiff has testified that the computer program defendant gave him to help prepare proposals was defective. (Van Sickle Dep. at 160, 164.) These contentions do not create a genuine issue of material fact, even when taken in the light most favorable to plaintiff, because the problems defendant had with plaintiff went beyond his failure to properly prepare proposals and return on investment analyses. Even if the court takes the proposals and return on investment analyses out of the equation, defendant remained dissatisfied with other essential aspects of plaintiff's job performance.

Plaintiff does not dispute that customers complained about him on occasion, but argues that the complaints should be disregarded for two reasons. First, plaintiff maintains that he was not told of the complaints. The court finds that this fact does not create a genuine issue of material fact because plaintiff was notified of the areas in which he had problems. Whether he knew of customer complaints is irrelevant since he clearly knew of his deficiencies. Second, plaintiff argues that the customer complaints lack credibility because many internal personnel people would disagree with a dealer's decision regarding computer software and that disagreement would result in complaints about plaintiff. (Van Sickle Dep. at 171; Ostergren Dep. at 66–67.) This also fails to create a genuine issue of material fact because the source of the complaints does not neutralize the fact that there were serious complaints about plaintiff's work.

Most of plaintiff's supervisor's complaints had nothing to do with achieving quota; therefore, plaintiff's argument that he would have reached far beyond his quota if given credit for the Graff deal is unavailing. Rather, the dissatisfaction stemmed from plaintiff's methods and his perceived sloppiness and inattention to detail. (Dulla Dep. at 82.) That plaintiff can demonstrate that he was close to quota, or that he would have surpassed quota if certain deals were included in his figures, does not create a genuine issue of

material fact that plaintiff performed the essential functions of his job. Defendant, through Dulla, made it plainly apparent to plaintiff that the methods of selling and the attention to detail were essential functions of his job; achieving quota may have been significant, but was clearly not the sole essential function of his job. Plaintiff failed to perform certain of the essential functions of his job.

Additionally, plaintiff's argument that defendant knew that when he was a KAE he did not prepare his own proposals does not create a genuine issue of material fact. There is no evidence in the record that a KAE is responsible for creating his or her own proposals, but the record does show that an MAE is. That plaintiff was not required to perform that function at his prior job does not create a genuine issue of material fact regarding plaintiff's ability to perform the job of an MAE. Finally, even if the customers' complaints do lack credibility, defendant directly told plaintiff that he had to improve in certain areas. Plaintiff did not. That is the central issue in this case. Whether the complaints came from disgruntled customers or from customers venting unhappiness with their supervisor's decision to use defendant's system is irrelevant. Plaintiff has failed to create a genuine issue of material fact on the issue of whether he was qualified to perform the requirements of his job. Because the evidence shows that plaintiff was not qualified to perform his job requirements, defendant is entitled to summary judgment.

**3.**

■■■ Defendant also maintains that plaintiff has not set forth a *prima facie* claim of handicap discrimination because defendant did not discharge plaintiff because of his scar. *Monette,* 90 F.3d at 1178. Defendant points to evidence that other of its employees have scars and that defendant has not made any adverse job decisions because of those scars. (Def.Br., Dulla Dep., Payne Dep.) Resolution of this issue is tied to resolution of the question of whether defendant perceived plaintiff as disabled. Plaintiff attempts to create a genuine issue of material fact by pointing to instances in which Dulla and Fields called plaintiff "scar face" or

made references to his scar. Such is not sufficient to create a genuine issue of material fact, even when taking the evidence in the light most favorable to plaintiff, because that evidence shows only that defendant knew of-perceived-plaintiff's scar. This case is not analogous to *Koblosh v. Adelsick*, 1996 WL 745390 (N.D.Ill. Nov. 20, 1996) (unpublished op.), where by the very reference to the alleged disability, the defendant implied that the plaintiff's cerebral palsy would inhibit the plaintiff's abilities as a security guard. In *Koblosh*, the defendant stated with surprise upon meeting plaintiff for plaintiff's interview "You're security? On crutches?" The obvious inference that the statement leads to is that the defendant did not believe that a man who needed crutches to walk could be a security guard. In this case, Fields' use of the term "scarface" was descriptive and not linked to any other statement from which the court can infer that Fields believed that the scar prevented plaintiff from doing his job. Dulla's comments indicated to the clients that plaintiff's scar enhanced his abilities to take care of the tough deals, not that plaintiff's scar inhibited his abilities. As insensitive as these comments may have been, they do not themselves disparage plaintiff's proficiency, and therefore are not proof of discrimination.

▮ Plaintiff additionally points to the testimony of Eric Ostergren, set forth at section III.B.1, *supra*, to support his argument that defendant terminated his employment because of his scar. The reason that the court rejected Ostergren's testimony earlier applies here as well. Ostergren stated in his testimony that he believed that Dulla thought that plaintiff's scar was hurting his ability to sell computer systems. This testimony fails to create a genuine issue of material fact because it establishes only Ostergren's beliefs, not Dulla's intentions.[5]

## C. Legitimate Business Reason Defense

Finally, defendant argues that even if the court concludes that there is a genuine issue of material fact regarding plaintiff's *prima facie* case, the court may grant summary judgment because defendant can show that it had legitimate business reasons for firing plaintiff. These reasons were addressed above in section III.B.2, where the court discussed plaintiff's inability to perform many of his job requirements, so the court will not reiterate them here. However, the court will address plaintiff's argument that defendant's professed reason for terminating his employment is a pretext, to the extent that these pretextual arguments were not addressed in section III.B.2.

▮ Plaintiff contends that when he was a KAE, one of his supervisors, Steve Anenen, believed that plaintiff had serious deficiencies, but was promoted plaintiff nonetheless. Further, Dulla did not believe that plaintiff was the best person to promote to the position of MAE. Finally, plaintiff received no complaints about his performance until after his automobile accident. The court finds that these facts do not create a genuine issue of material fact. They may call into question the reasons for promoting plaintiff in the first instance, but these facts do not demonstrate in any way that defendant intended to discriminate against plaintiff based on his handicap. Rather, these comments are ambiguous and isolated remarks regarding his alleged disability, and are thus not sufficient to demonstrate discrimination. *See generally Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025–26 (6th Cir.), *cert. denied*, 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 610–11 (11th Cir.1987). Accordingly, defendant is entitled to summary judgment on this alternative ground.

## IV. Conclusion

Accordingly, IT IS ORDERED that defendant's Motion for Summary Judgment is hereby GRANTED.

---

5. The court has noted above that it has precluded plaintiff from including an affidavit of Ostergren in the record. Although Ostergren's affidavit, if the court were to consider it, would create a genuine issue of material fact about whether Dulla terminated plaintiff because of his scar, the court would still grant summary judgment on the strength of the findings made in sections III.B.2 and III.C.