**Rex M. WATSON,**

v.

**CENCOM CABLE INCOME PARTNERS, d/b/a Charter Communications.**

No. 3–97–0304.

United States District Court, M.D. Tennessee, Nashville Division.

Dec. 8, 1997.

Debra A. Wall, Clarksville, TN, for Plaintiff.

Lee Webb Campbell, II, Sherrard & Roe SunTrust Financial Center, Nashville, TN, James N. Foster, Jr., Stephen B. Maule, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for Defendant.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendant's motion (filed September 2, 1997; Docket Entry No. 22) for partial summary judgment and/or in the alternative for summary judgment, its memorandum (Docket Entry No. 23) in support, and the plaintiff's response (filed October 6, 1997; Docket Entry No. 30).

The Court has subject matter jurisdiction over the plaintiff's federal claim under 42 U.S.C. § 12117, and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

For the reasons discussed below, the Court shall grant the defendant's motion.

### I.

The plaintiff, Rex M. Watson, filed this action against Cencom Cable Income Partners, doing business as Charter Communications, in the Chancery Court for Montgomery County, Tennessee. The plaintiff claims he was fired from his position as an installation supervisor because of his carpal tunnel syndrome in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4–21–101, *et seq.*, and in retaliation for filing a claim under the Tennessee Workers' Compensation Act.[1] The defendant filed a notice of removal of this case to federal court on March 19, 1997. (Docket Entry No. 1).

The defendant is a provider of television cable services in Clarksville, Tennessee. The plaintiff began working for the defendant's predecessor in October of 1978. In 1989, the plaintiff was promoted to the position of installation supervisor. In January of 1993, Mr. Rodney Lanham replaced the plant manager at the Clarksville facility. In February of 1993, the plaintiff was diagnosed with carpal tunnel syndrome. He subsequently reported his condition to the defendant and filed a workers' compensation claim.

Mr. Lanham gave the plaintiff a performance review in May of 1994, and indicated several areas in which the plaintiff needed improvement. On September 30, 1994, the plaintiff received a written warning from Mr. Lanham for failing to ensure that his installers had the necessary knowledge and training to perform their jobs. On January 25, 1995, the plaintiff received a second written warning from Mr. Lanham for failing to plan, organize, and control the activities of his department.

In June of 1995, Mr. Lanham directed the plaintiff to review the wiring in certain apartment buildings under his control and submit a report as to any deficiencies and when the deficiencies would be corrected. The plaintiff allegedly submitted a late and unsatisfactory report on July 8, 1995. During a field audit on October 31, 1995, Mr. Lanham noted numerous wiring deficiencies in the apartments, which the plaintiff had allegedly indicated would be corrected. The plaintiff received a final written warning on November 17, 1995, which indicated that if he did not correct at least 95 percent of the deficiencies within 45 days, he could be terminated. Although the defendant asserts that the plaintiff was terminated on February 8, 1996, after Mr. Lanham determined that the plaintiff's deficiency rate was 15.38 percent, the plaintiff alleges that he worked through February 20, 1996.

The defendant moves for summary judgment on the plaintiff's claim under the ADA on the grounds that the plaintiff cannot establish a prima facie case of discrimination as he is not disabled within the meaning of the ADA; as he never requested a reasonable accommodation during his employment; and as he cannot show that his alleged disability was the cause of his termination. Even if the plaintiff can establish a prima facie case, the defendant argues that the plaintiff was terminated for a legitimate, non-discriminatory reason, and that the plaintiff cannot establish pretext.

---

**1.** The plaintiff also alleged under Count IV of his complaint that he was discharged based on his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* However, by order entered April 21, 1997 (Docket Entry No. 13), the Court granted the defendant's motion to dismiss Count IV with prejudice.

The defendant also moves for summary judgment on the plaintiff's claim under the THRA as the THRA does not cover the plaintiff's claims involving disability and retaliation. Finally, the defendant moves for summary judgment on the plaintiff's claim of retaliation on the ground that the plaintiff cannot establish a prima facie case of retaliation as his claim for workers' compensation benefits was not a substantial factor in the defendant's decision to terminate him.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991).

In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.,* 921 F.2d at 1349; *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989) A dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[2] *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's

position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the nonmoving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.,* 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

## III.

The Americans with Disabilities Act prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In the absence of direct evidence, a plaintiff may establish a prima facie case of discrimination under the ADA by showing that he is a disabled person within the meaning of the Act; that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; that he suffered an adverse employment decision because of his disability; that the employer knew or had reason to know of his disability;

---

**2.** The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

and after the plaintiff was terminated, the position remained open, or the disabled individual was replaced. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996).

■ The defendant alleges that the plaintiff cannot establish a prima facie case of discrimination under the ADA because he cannot establish that he was disabled within the meaning of the ADA.[3] The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

The defendant contends that the plaintiff does not have a physical or mental impairment that substantially limits one or more of the major life activities. The defendant does not seem to dispute that carpal tunnel syndrome constitutes a physical impairment. The defendant does dispute, however, that the plaintiff's impairment substantially limits a major life activity, namely the major life activity of working.

Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). With respect to the major life activity of working, "[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

■ "An impairment which merely prevents an individual from performing a particular job is not 'substantially limiting' within the meaning of the Americans with Disabilities Act, because an impairment must 'foreclose generally the type of employment involved.'" *Van Sickle v. Automatic Data Processing, Inc.*, 952 F.Supp. 1213, 1220–21 (E.D.Mich.1997) (citing *Taylor v. United States Postal Serv.*, 946 F.2d 1214, 1217 (6th Cir.1991) and *Forrisi v. Bowen*, 794 F.2d 931, 935 (4th Cir.1986)). The United States Court of Appeals for the Sixth Circuit has explained that "the impairment must significantly restrict the claimant's ability to perform either a class of jobs or a broad range of jobs in certain classes.... An impairment that prevents a claimant from a narrow range of jobs only will not qualify as a substantially limiting impairment under the ADA." *Hall v. Shelby County Government*, No. 96–6506, 1997 WL 468328 at *2 (6th Cir. August 13, 1997) (affirming the district court's grant of summary judgment in favor of the employer).

Thus, the plaintiff carries the burden of establishing that his physical impairment significantly restricts his ability to perform "either a class of jobs or a broad range of jobs in various classes." In determining whether a person is substantially limited, the court should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

Apparently, the plaintiff was diagnosed with carpal tunnel syndrome in February of 1993. In 1995, the plaintiff underwent a surgical decompression on both hands. After the procedure, Dr. Steven McLaughlin opined that the plaintiff had a 15 percent permanent impairment to each hand, and he restricted the plaintiff to lifting no more than 5 to 10 pounds with either hand, no repetitive gripping, no repetitive wrist flexion, and avoiding prolonged vibration. The plaintiff was released to limited duty. McLaughlin deposition (Docket Entry No. 30) attachment at exhibit D3–D4. Although the plaintiff ex-

---

3. The defendant also argues that the plaintiff cannot establish a prima facie case because he cannot show that he requested a reasonable accommodation or that his alleged disability was the cause of his termination. Because the Court finds that the plaintiff cannot establish the first element of a prima facie case under the ADA, it will not address the other elements discussed by the defendant.

perienced a recurrence of bilateral epicondylitis in 1996, there is no indication that the limitations placed on the plaintiff by Dr. McLaughlin changed. *Id.* at D5–D6. In a functional capacity assessment completed August 13, 1996, Dr. McLaughlin opined that the plaintiff could frequently lift and/or carry a maximum of 10 pounds, stand and/or walk a total of about 6 hours, and sit a total of about 6 hours. He indicated that the plaintiff was limited in the ability to reach, handle, and finger, but did not indicate the degree of his limitation or how it would affect his ability to work.[4] *Id.* at D18.

The plaintiff has responded to the defendant's motion for summary judgment on the issue of being substantially limited in a major life activity as follows:

Plaintiff has a physical impairment affecting his neurological and musculoskeletal systems. Plaintiff's impairment affect [sic] a major life activity as it affects Plaintiff's ability to perform manual tasks. Plaintiff is further substantially limited in the condition and manner under which he performs major life activities, i.e. [sic], performing manual tasks. Plaintiff has lost the ability to lift other, than small items, to hold his hands in a flexed position as one does whenever a telephone or computer is used, to use his hands repetitively, as well as his ability to touch and feel. Plaintiff's impairment is now permanent as it will be with him for the remainder of his life. Dr. McLaughlin evaluates Plaintiff as having a fifteen percent (15%) impairment to each upper extremity. Thus, Plaintiff has established a disability within the meaning of the ADA.

Plaintiff's memorandum (Docket Entry No. 30) at 13–14.

In *McKay*, the Court specifically rejected a similar argument. The plaintiff in *McKay* was diagnosed with carpal tunnel syndrome and limited to maximum lifting of 20 pounds, no vibrating tools, and no repetitive use of her right hand. The Court rejected the EEOC's interpretation of the medical evidence that the plaintiff was disqualified " 'from performing any manual labor exceeding light duty' " and was, thus, precluded from performing an entire class of jobs. *McKay*, 110 F.3d at 373. The Court of Appeals agreed with the district court that the plaintiff was only precluded from performing repetitive-motion factory work. *Id.*

Likewise, in *Wooten v. Farmland Foods*, 58 F.3d 382 (8th Cir.1995), which was cited by the *McKay* Court, the United States Court of Appeals for the Eighth Circuit recognized that the physician-imposed restrictions of " 'light work—no work with meat products—no work in cold environment—lifting 10 lbs. frequently 20 lbs. maximum,' " *id.* at 384, "gave no indication that (the plaintiff's) major life activities were substantially limited but indicated that [the plaintiff] was restricted to Light duty work with no meat products and no work in a cold environment." *Id.* at 386. Thus, the Court held that regardless of whether the plaintiff's impairment was temporary or permanent, the plaintiff was only precluded from "performing a narrow range of meatpacking jobs." *Id.*

In the instant case, Dr. McLaughlin never restricted the plaintiff from performing manual tasks, only repetitive movements with his hands and some limitation in reaching, handling, and fingering. There is no evidence in the medical record that the plaintiff cannot use his hands to hold a telephone or operate a computer. Even if his particular job did require the use of a computer and some typing,[5] which the plaintiff alleges he could not perform, the plaintiff has not carried his burden of showing that his inability to perform these tasks resulted in his not being

---

4. Dr. McLaughlin left blank the category concerning the plaintiff's ability to push and/or pull with his hands.

5. The Court is not sure that the plaintiff's job even required these functions or that they were a substantial job function of the plaintiff's position. The defendant pointed out that an installation supervisor does not work with a computer "hardly at all" and does not even have one.

Lanham deposition (Docket Entry No. 25) Tab 3 at 127–128. Further, the defendant stated in its motion for summary judgment that typing was not a substantial job function of the plaintiff's position as installation supervisor and referenced a position announcement which did not list typing as one of the duties of an installation supervisor. Notice (Docket Entry No. 25) Tab 4 at exhibit 11.

able to perform a class of jobs or a broad range of jobs in various classes. *See Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir.1985) (holding that a postal employee who had an impairment which prevented him from working at a letter sorting machine was not handicapped under the Rehabilitation Act because he could still carry out other duties at the post office and, thus, was not substantially limited in a major life activity).[6]

The Court concludes, as did the Court in *McKay*, that "a diagnosis of carpal tunnel syndrome, by itself, [is] insufficient to raise a genuine issue of material fact concerning whether plaintiff was disabled within the contemplation of the ADA." *McKay*, 110 F.3d at 372.

### IV.

As the defendant has established the absence of a genuine issue of material fact on this issue and the plaintiff has not responded with affirmative evidence supporting his claim and establishing the existence of a genuine issue of material fact, the plaintiff has failed to show that a reasonable jury could find that he has an impairment that substantially limits a major life activity. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. Accordingly, the Court finds that the plaintiff cannot prevail on his prima facie case of discrimination under the ADA.[7] The Court will therefore grant the defendant's motion (Docket Entry No. 22) for summary judgment.

As the Court dismisses with prejudice the federal claim, it declines to exercise supplemental jurisdiction over the plaintiff's pending state claims. *See* 28 U.S.C. § 1367(c)(3); *see also Cameron v. Seitz*, 38 F.3d 264, 276 (6th Cir.1994) ("With the dismissal of the [federal] claim, original jurisdiction over the state ... claim is lacking, and the district court has discretion as to whether to continue to exercise supplemental jurisdiction over it."). Thus, the Court shall dismiss without prejudice the plaintiff's state law claims.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the defendant's motion (filed September 2, 1997; Docket Entry No. 22) for summary judgment is granted.

Accordingly, the plaintiff's federal claim under the Americans with Disabilities Act is dismissed with prejudice. The plaintiff's state law claims under the Tennessee Human Rights Act and the Tennessee Workers' Compensation Act are dismissed without prejudice.

Entry of this order and the order entered April 21, 1997 (Docket Entry No. 13) shall constitute the judgment in this action.

It is so ORDERED.

---

**6.** As noted in *McKay*, reference to this case is permissible since the ADA regulations adopted several of the definitions in the Rehabilitation Act, and thus, courts may look to cases under the Rehabilitation Act when construing the ADA. *McKay*, 110 F.3d at 373, n. 1.

**7.** Although a plaintiff may also establish that he is disabled within the meaning of the ADA by showing either that he has a record of a physical impairment that substantially limits one or more of the major life activities or that he is regarded as having a physical impairment that substantially limits one or more of the major life activities, the plaintiff has not argued that he falls into either of these categories. In his complaint, plaintiff merely alleges that he "suffered from a severe disability, bilateral carpal tunnel syndrome which was diagnosed by a qualified medical doctor and which could not be completely

corrected by the surgical procedures he received." Complaint (Docket Entry No. 1) attachment ¶ 11. Moreover, the Court finds that any argument that the plaintiff fits into these categories would be without merit since the Court has already determined that the plaintiff does not have a physical impairment that substantially limits one or more of the major life activities and because it is clear that the plaintiff was not regarded by the defendant as having such an impairment. *See* plaintiff's deposition (Docket Entry No. 25) Tab 1 at 135–136 (" 'From the day that I reported my problem with my hands, there has been no response from my supervisor or general manager concerning my condition. Even after surgery, there is no concern as to my condition. In my eyes, my supervisors acted toward me as if there had been no problem or never existed before as well as after surgery.' ")